(No. 18109.—

W. H. ROHRER *vs.* FRED E. DEATHERAGE *et al.*—(E. B. COE, Plaintiff in Error, *vs.* W. H. ROHRER *et al.* Defendants in Error.)

*Opinion filed October 19, 1929.*

CARL E. ROBINSON, and BELLATTI, SAMUELL & MORIARTY, for plaintiff in error.

JOHN J. REEVE, and WILLIAM T. WILSON, for defendants in error.

Mr. Justice Dunn delivered the opinion of the court:

William H. Rohrer on March 14, 1924, brought a suit in the circuit court of Morgan county to foreclose a mortgage for $12,000 on 140 acres of land against Fred E. Deatherage, the mortgagor, and E. B. Coe, his tenant. On June 20, 1924, George L. Kimber was appointed and duly qualified as receiver, and on July 21 a decree of foreclosure was entered. Afterward, on May 25, 1925, the court entered an order adjudging that the complainant was not entitled to any relief against Coe; that Coe was entitled to retain to his own use all the rents, issues and profits of the premises from March 1, 1924, to March 1, 1925; that the proceeding be dismissed as to him, and that the right of Kimber to be reimbursed by the complainant for his expense as receiver be reserved for future determination. Rohrer, the complainant, and Kimber, the receiver, appealed from this order. The Appellate Court reversed it, and Coe has been allowed a writ of *certiorari* to review the record.

Deatherage was the owner of the land and on March 1, 1920, mortgaged it to secure the payment of $21,000 in five years. On March 4, 1920, he executed a second mortgage, which was recorded on March 5, conveying the lands, "together with the rents, issues and profits thereof," to W. H. Rohrer to secure his indebtedness to Rohrer for $12,000, due in two years. Deatherage continued in possession of the land, and on February 25, 1924, leased it to E. B. Coe for the period from March 1, 1924, to March 1, 1925, for $900, payable in advance, which Coe paid, and on March 1, 1924, he went into possession. Coe answered, setting up his lease and payment of the rent, and his want of knowledge or notice of the mortgage or of any default. The order appointing the receiver provided that Coe should retain possession until March 1, 1925, as the tenant of the receiver, and that all questions touching

the right of Coe under his lease with Deatherage should be determined upon the coming in of the receiver's report. The decree of foreclosure, which was subject to the mortgage for $21,000, was for $14,311.92, for which the master was directed to issue a certificate of indebtedness, and a sale was ordered as provided by law if redemption was not made.

In October, 1924, Deatherage was adjudged a bankrupt upon his own petition, and on December 4, 1924, the trustee in bankruptcy filed his petition in the bankruptcy proceeding alleging that Deatherage was the owner of the real estate prior to the adjudication in bankruptcy, subject to the liens of the mortgage for $21,000 and the certificate of indebtedness of the master in chancery of Morgan county for $14,311.92; that it would be for the benefit of the estate that the land be sold clear of or subject to the lien for $21,000 and clear of the lien for $14,311.92, and praying for an order to sell subject to or clear of the first lien but clear of the second. On January 7, 1925, an order was entered on the trustee's petition finding that it was for the best interest of the estate and its creditors that the premises be sold free of the two mortgage liens, which should be transferred to the proceeds of the sale, and that Rohrer had consented to a sale free of his lien, and ordering that the trustee sell the real estate free of liens, "except the contested claim for rents, issues and profits for 1924, which the circuit court of Morgan county, Illinois, is given hereby the right and permission to hear and determine." The trustee sold the land on January 31, 1925, subject to the taxes for 1924 and to the right of the tenant, Coe, to possession to March 1, 1925, to Rohrer for $31,950. The sale was approved on March 11, and distribution was ordered, first, to pay $1200 costs, second, to satisfy the first lien, and third, to apply the remainder to the payment of the indebtedness due to Rohrer. The total of the costs and the first lien

amounted to $24,913.38, and thus all but $7274.90 of the debt due to Rohrer was paid.

The first proposition of the plaintiff in error that the inclusion in the Rohrer mortgage of the rents, issues and profits of the land, with the land itself, would not alone deprive the mortgagor of the right to receive the rents for his own use until the mortgagee took some steps to enforce his lien upon the rents and profits, is a correct statement of the law and is supported by the authorities cited. The mortgagor is entitled to his rents until a receiver is actually appointed, and the receiver cannot collect rents already paid to the mortgagor. (*Mississippi Valley and Western Railway Co.* v. *United States Express Co.* 81 Ill. 534; *Gilman* v. *Illinois and Mississippi Telegraph Co.* 91 U. S. 603; *Sullivan* v. *Rosson,* 223 N. Y. 217.) In this State a mortgagor is the legal owner of the mortgaged premises against all persons except the mortgagee and his assigns. (*Williams* v. *Williams,* 270 Ill. 552; *City of Chicago* v. *Sullivan Machinery Co.* 269 id. 58; *Seaman* v. *Bisbee,* 163 id. 91; *Barrett* v. *Hinckley,* 124 id. 32; *Emory* v. *Keighan,* 88 id. 482; *Hall* v. *Lance,* 25 id. 277.) While a mortgage conveys a title as between the mortgagor and the mortgagee, it is only a qualified title as security for the creditor during the existence of the debt, and the mortgagor is regarded as the owner of the land for all beneficial purposes, subject only to the rights of the mortgagee. (*Theiner* v. *Speckin,* 290 Ill. 181; *Fitch* v. *Pinckard,* 4 Scam. 69.) After condition broken, however, the mortgagee is, as between him and the mortgagor, the owner of the fee. (*Ladd* v. *Ladd,* 252 Ill. 43; *Ware* v. *Schintz,* 190 id. 189; *Waughop* v. *Bartlett,* 165 id. 124; *Esker* v. *Heffernan,* 159 id. 38; *Oldham* v. *Pfleger,* 84 id. 102; *Barrett* v. *Hinckley, supra.*) The mortgagor has the right to sell or make leases of the premises, and his grantee or lessee will have the right of possession until default in the

terms of the mortgage, but the mortgagor cannot make a lease of the mortgaged premises which will give greater rights than he himself possesses or will interfere with the right of the mortgagee to enter for condition broken. After condition broken, ejectment may be maintained by the mortgagee against the mortgagor or those to whom he may have assigned the equity of redemption. (*Taylor* v. *Adams,* 115 Ill. 570.) Upon default in the condition of the mortgage the mortgagee has the right to possession against the mortgagor, his grantee, lessee or anyone claiming under him by any right. In such case the mortgagee has several remedies which he may pursue to enforce the payment of his debt. He may sue the mortgagor in assumpsit for a judgment upon the personal obligation; he may sue in equity for the foreclosure of the mortgage; or he may recover the possession of the mortgaged property by an action of ejectment. These remedies are concurrent or successive, as the mortgagee may deem proper, and he may pursue any two or all three of the remedies simultaneously. (*Bradley* v. *Lightcap,* 202 Ill. 154; *Fish* v. *Glover,* 154 id. 86; *Harper* v. *Ely,* 70 id. 581; *Rogers* v. *Meyers,* 68 id. 92; *Carroll* v. *Ballance,* 26 id. 9; *Vansant* v. *Allmon,* 23 id. 26.) On March 14, 1924, when the bill was filed, there had been a default in compliance with the terms of the mortgage. Upon demand of the mortgagee it was equally the duty of Deatherage, the mortgagor, and Coe, his lessee, to surrender possession to him. Coe's lease, even though he had paid the rent in advance for the whole term, would have been no defense to an action of ejectment. The condition was the same on June 20, when the receiver was appointed. The court could then have ordered both Deatherage, the mortgagor, and Coe, his lessee, to surrender possession to the receiver, but he did not do so. He ordered that Coe retain possession until March 1, 1925, as the tenant of the receiver, and reserved the deci-

sion of the question of the right of Coe under his lease from Deatherage until the coming in of the report of the receiver. Under the express pledge contained in the mortgage of the rents, issues and profits for the security of the debt, it was proper to appoint a receiver to collect the rents, issues and profits. Coe had no right, as against Rohrer, to the possession of the premises. The court, instead of ordering him to surrender the possession to the receiver, as it might have done, authorized him to remain in possession until the first of the next March as the tenant of the receiver, reserving all questions touching his rights under his lease with the defendant, Deatherage. As we have seen, he had no rights under that lease as against Rohrer. He did remain in possession of the farm, raised crops on it and sold them. The receiver endeavored to come to an agreement with him about the rent to be paid but was unable to do so. Coe was a party to the suit. The order was binding on him as well as on Rohrer and the receiver. Since his lease from Deatherage was of no effect between him and Rohrer, the amount of the rent was not binding on either of them. Since he and the receiver failed to make any agreement, his liability was for the reasonable cash value of the use and occupation of the premises from the time of the appointment of the receiver until his occupation ceased. It is said he did not attorn to the receiver, but this was not necessary. His occupation, which before the appointment of the receiver was under his valid lease from Deatherage, had no basis, after the appointment of the receiver, except the order of the court, which permitted him to remain in possession as the receiver's tenant. This order was binding on the receiver, and if Coe availed himself of it to retain possession of the farm, to which he was not otherwise entitled, he cannot say that he did not become liable to pay for its use and occupation.

Counsel for the plaintiff in error contend that by consenting to the decree of the Federal court for the sale of

the property free of his lien Rohrer made it impossible for the circuit court to ascertain the deficiency of the property to pay Rohrer's mortgage in the manner provided by law,—that is, by the sale of the property under the decree of the circuit court. The United States district court sitting as a court of chancery has, under the general equity powers conferred upon it by the Bankruptcy act, authority to order a sale by the receiver or trustee of the bankrupt property free from all liens and incumbrances. (*In re Eatsum Products Corp.* 286 Fed. 447; *In re Gimbel,* 294 id. 883.) In the latter case it was said: "The rights of such court to bring before it parties having or asserting claims to or liens upon such property, to order the sale of such property free of liens, and the application of proceeds of such sale to the satisfaction of liens on the property found to exist, are incidents of the power of the court to administer the bankrupt's estate." In *In re Kinsey Co.* 184 Fed. 694, it was said: "The property came to the hands of the trustee. * * * It was the property of the bankrupt, and the bankruptcy court had undoubted authority to order it sold and converted into money. But there was a claim of lien against it. Whether it was a valid lien or for how much was an open question, the existence of which would seriously affect the price that any purchaser would pay for it. This impediment would be eliminated if the property were sold free of liens. The lien could be adjudicated and the holders paid from the proceeds if the lien was held valid. Thus the whole value would be saved."

The Federal court had the power to decree the sale either with or without the consent of the lienholders, and it must be presumed that its judgment in rendering the decree was properly exercised. It was not necessary, in order to ascertain the deficiency, that a sale should be made under the decree of the circuit court. The property was sold under the decree of a court having jurisdiction to order it sold at a public sale. There is nothing to indicate that it

did not bring its full value. There was no authority for another sale under a decree of the circuit court, but the fact was made to appear after the property had been sold in the regular course of judicial proceedings and the proceeds of the sale applied to the liens upon it in the regular course of proceedings, that there was a deficit of over $7000 for the payment of the Rohrer mortgage. Rohrer's consent to the decree cannot be said to have prejudiced Coe in any way, for the amount of the proceeds applicable to the payment of Rohrer's decree was not in any way reduced by such consent. There is nothing to show that the sale was not for the full value of the premises, and the presumption of law is that it was.

The judgment of the Appellate Court reversing the decree of the circuit court is affirmed.

*Judgment affirmed.*