(No. 20286.— ▮▮▮▮▮▮)

The Rankin-Whitham State Bank, Appellant, *vs.* James Mulcahey *et al.*—(Nellie Abbott, Appellee.)

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

Hall & Holaday, (Arthur R. Hall, of counsel,) for appellant.

Alfred A. Johnson, and Acton, Acton & Snyder, for appellee.

Mr. Justice Duncan delivered the opinion of the court:

The Appellate Court for the Third District affirmed a decretal order of the circuit court of Vermilion county in favor of appellee, Nellie Abbott, upon her intervening petition, filed in a suit for the foreclosure of a trust deed by appellant, the Rankin-Whitham State Bank, against James Mulcahey and others, in which appellee claimed, by virtue of a chattel mortgage, the proceeds of the sale of certain corn harvested from the mortgaged premises and sold by

the receiver appointed by the court to take possession of the premises. A certificate of importance having been granted by the Appellate Court, appellant prosecutes an appeal to this court.

On July 11, 1923, James Mulcahey made and delivered to appellant four promissory notes for the total principal amount of $13,000, payable on or before three years after date, and on the same date executed a trust deed on certain lands owned by him in Vermilion county to secure the payment of said notes, and the trust deed was filed for record and recorded on July 12, 1923. This trust deed was subject to two prior trust deeds on the land securing other indebtedness of $29,000. On March 19, 1926, before there was any default in the payment of the principal and interest secured by the junior trust deed, Mulcahey conveyed the premises covered by the trust deed to his mother, Mary Mulcahey, by warranty deed, which was recorded March 24, 1926. She did not assume or agree to pay the amount of indebtedness secured by the mortgages on the premises. On March 22, 1926, she leased the premises to Mulcahey for the period from that date to March 1, 1927, for a cash rental of five dollars an acre for the grass and pasture land and one-half of all grain raised on the premises, to be delivered by the tenant at an elevator or elevators in the neighborhood. The trust deed of Mulcahey made by him to secure the notes to appellant contained the provisions that if default should be made in the payment of the notes, upon the application of the legal holder of the notes it should be lawful for the trustee named in the trust deed, Eugene H. Whitham, to enter and take possession of the premises granted and to collect and receive all rents, issues and profits thereof, and in his own name to file a bill against Mulcahey in any court having jurisdiction, to obtain a decree for the sale and conveyance of the premises under order of the court, and out of the proceeds of any such sale to first pay the costs of suit, all costs of advertising, sale and convey-

ance, including the reasonable fees and commissions of the trustee or of persons who may be appointed to execute the trust, and $500 for attorneys' and solicitors' fees and all other expenses of the trust, including moneys paid for insurance, taxes and other liens or assessments, with seven per cent per annum, then to pay the principal of the notes and interest thereon, rendering the overplus, if any, to Mulcahey, his legal representatives or assigns, on reasonable request, and to pay any rents that may be collected after such sale and before the time of redemption expires, to the purchaser at the sale. Default having been made in the payment of the notes, on September 22, 1926, appellant filed its bill to foreclose the trust deed, making parties defendant thereto James and Mary Mulcahey and the trustee, Whitham. Personal service of summons was had on James and Mary Mulcahey but no answer or other pleading was filed by either of them, and they were declared in default. On October 14, 1926, a decree of foreclosure was entered, and the trustee was appointed receiver by the court and was given full power, in accordance with the provisions of the trust deed, to enter into and upon and take immediate possession of the premises, and to collect and receive all rents, issues and profits arising out of the premises during the pendency of the foreclosure suit, and upon the foreclosure and sale of the premises it was directed by the decree that the proceeds of the sale and the rents, issues and profits collected by the receiver should be applied to the payment of the costs and expenses and all other matters provided for by the provisions of the trust deed. On October 20, 1926, the receiver filed his bond and it was approved by the court, and the receiver immediately took possession of the premises for the discharge of his duties. The premises were sold under the decree of foreclosure by the master in chancery on November 15, 1926, and were purchased by appellant. The amount realized from the sale was insufficient to satisfy the decree, and on November 18, 1926, the master's report of sale was

approved and judgment was entered against Mulcahey for $4097.70, the amount of the deficiency, and the court ordered and decreed that appellant should have a first lien upon all income of the mortgaged premises until the deficiency was paid, and further decreed that the receiver should retain possession of and rent the premises and collect all rents, issues and profits of the premises during the redemption period. On November 30, 1926, the receiver leased the premises to Mulcahey for the period from March 1, 1927, to February 15, 1928, the last named date being the day that the master in chancery issued a deed to appellant, the purchaser at the master's sale.

At the time the bill for foreclosure of the trust deed was filed there was growing on the land covered by the trust deed a crop of corn planted thereon by James Mulcahey, as tenant of his mother, Mary Mulcahey, which was not harvested until after the sale of the premises by the master in chancery under the decree of foreclosure. This crop of corn was gathered by the receiver after the foreclosure sale and by him placed in a crib on the premises, and he was paid the cost of gathering and cribbing the corn by appellant, the purchaser. All of the corn so placed in the crib by the receiver, 3863 bushels and 12 pounds, was sold by the receiver at an elevator in Rankin, Illinois, at eighty-four cents a bushel, on July 9, 1927, for a total amount of $3245.10. It is as to the alleged one-half interest of Mulcahey, as tenant of his mother, in this crop of corn that the dispute in this case arises.

On June 7, 1927, more than six and one-half months after the mortgaged land had been sold to appellant, the mortgagee, James Mulcahey, the mortgagor, gave a chattel mortgage to his sister, Nellie Abbott, to secure an alleged indebtedness of $15,000 to her by Mulcahey. This chattel mortgage covered a lot of livestock, farm implements and the corn in crib on the mortgaged land and in the possession of the receiver, as heretofore stated. All this corn

was still growing on the mortgaged land when it was sold to appellant by the master in chancery. On September 23, 1927, appellee, Nellie Abbott, filed a petition in the circuit court of Vermilion county in which she claimed to be entitled to one-half the proceeds of the corn sold by the receiver, as heretofore stated. She based her claim on the chattel mortgage given to her by Mulcahey. An answer to this petition was filed by appellant and the receiver and a replication was filed by appellee. E. H. Whitham, the receiver, died before a hearing was had on the intervening petition, and G. H. Whitham, his executor, was substituted in his stead as acting receiver. The acting receiver filed his report of receipts and expenditures and appellee filed exceptions to his report. The matter was referred to the master in chancery to take and report the evidence and his conclusions of fact and law. The master filed his report and recommended a decree in favor of appellee for one-half the proceeds of the sale of the corn, less the amount expended by the receiver in harvesting, shelling and marketing it. Exceptions to the master's report by appellant were overruled by the court and a decretal order was entered in which the court found that the total amount received by the receiver from the sale of all the corn was $3245.10, and that appellee was entitled to one-half of that amount, $1622.55, less $588.55 paid by the receiver for harvesting, shelling and marketing the corn. The acting receiver was ordered to pay to appellee the sum of $1034 from the funds in his hands.

The evidence taken before the master shows that on June 7, 1927, James Mulcahey was indebted to his sister, Nellie Abbott, the appellee, in the sum of $15,000, and on that date signed and duly acknowledged a chattel mortgage to her covering numerous items of personal property and one-half the corn in the crib on the mortgaged premises to secure his note for $15,000, due on the same date as the chattel mortgage, June 7, 1927. This chattel mortgage was

filed for record and recorded on June 8, 1927. On June 6, 1927, notices of sale of one-half the corn in the crib under the chattel mortgage were posted, the sale to be held on June 9, 1927, but before the time specified in the notices for the sale the receiver sold the corn, as above stated. Nevertheless a purported sale of the corn under the notice was held, at which appellee was declared the purchaser of the corn covered by the chattel mortgage for $1757.66. At about the time the decree of foreclosure was entered in this case and E. H. Whitham was appointed receiver a decree of foreclosure of a mortgage on other land of Mulcahey, called the north farm, was also entered, and Whitham was also appointed receiver of the land involved in that case. The land involved in this case is referred to as the south farm. J. C. Speck, an assistant cashier of the Rankin-Whitham State Bank, of which the receiver was cashier, testified that in the fall of 1926 he went with the receiver to the north farm and helped him post notices that all the grain on the farm was in the possession of the receiver; that witness thought the receiver also went onto and posted notices on the south farm but that he did not know about that; that after the notices were posted, men working on the south farm as well as men working on the north farm came to the bank and inquired about where they were going to get pay for their work. The evidence shows that the receiver paid the cost of harvesting the corn, and, as stated above, he was allowed credit for the amount so paid in the decretal order in favor of appellee.

No question is raised as to the validity of the order of the court appointing Whitham receiver, and the only question presented is whether appellee had any interest in the corn raised on the mortgaged premises.

In this case the order appointing the receiver provided that he should take immediate possession of the mortgaged premises, and he did so. This action of the court amounted to an ouster of James Mulcahey, the mortgagor, from the

possession of the premises. After the mortgagor was so ousted from the possession of the premises, the receiver on November 30, 1926, leased the premises to the mortgagor for the period from March 1, 1927, to February 15, 1928, but this period and the rent for this period are not in question in this suit. At the time the receiver was appointed the corn in question was standing unsevered on the mortgaged premises, and so far as the mortgagee's rights (appellant's rights) and the rights of the receiver are concerned was a part of the mortgaged premises, and the mortgagor was not in possession at any time after he was ousted by the receiver. Had the mortgagor severed the crop of corn after this suit in foreclosure was begun and after the receiver was appointed and before he took possession, such severance by the mortgagor would not have given him title to the grain as against the holder of the notes and the deed of trust. (*Anderson* v. *Strauss,* 98 Ill. 485.) After the conditions of the terms of the trust deed were broken by Mulcahey, the mortgagee (appellant) had several remedies which it might pursue to enforce the payment of the notes. It could have sued the mortgagor in assumpsit for a judgment upon the notes. It also had the right to recover the possession of the mortgaged property by an action of ejectment, and as it had the right, under the trust deed, to the possession of the property it was also entitled to the remedy by foreclosure and the taking possession of the land and the corn crop growing thereon through a receiver appointed by the court, which it did do. It was therefore the duty of the mortgagor, on filing the bill for foreclosure and the appointment by the court of the receiver, to surrender possession of the land and the growing corn to the receiver. Whether he did or did not immediately surrender such possession to the receiver is an immaterial question. It was not even necessary that he should attorn to the receiver. When the receiver was appointed and qualified as such he was entitled to the possession of the corn as well as of the land,

and it was his right and duty to harvest the crop of corn and sell it, as he did do, and it was the right of appellant, the mortgagee, to have the receiver apply the entire crop of corn on the payment of the deficit or upon the amount of the decree in foreclosure, as provided by the terms of the trust deed, in reduction of the amount of the deficit, after deducting the costs and expenses of gathering, cribbing and selling the corn. *Rohrer* v. *Deatherage,* 336 Ill. 450.

Appellee takes the position that the decision in the case of *Rohrer* v. *Deatherage, supra,* is not controlling in this case because the decision in that case was that the receiver was entitled to rent from the tenant and because it was not decided that he was entitled to the crop raised by the tenant. It is said by appellee that in the case in hand there is no dispute as to one-half of the corn of the landlord; that the receiver has taken that one-half without any dispute, and that he has therefore received the rent of the land—all that it was held the receiver was entitled to in the *Rohrer case.* The actual decision in the *Rohrer case* was necessarily limited to the proposition that the receiver was entitled to recover from the tenant for the use and occupation of the premises, notwithstanding he had paid rent in advance to the mortgagor, because the order appointing the receiver provided that the tenant should remain in possession of the mortgaged premises as the tenant of the receiver. The court in that case, however, stated in passing on the case that the circuit court might properly have ordered the tenant to surrender possession to the receiver.

If James Mulcahey after the execution of the trust deed had made no conveyance of the premises to his mother but had remained on the land and planted the corn in question as owner of the land, then there could be no question as to the right of the receiver to take the entire crop of corn. When Mulcahey conveyed the land to his mother she took no right or interest in the land greater than he had as mortgagor, and when he took a lease of the land from his mother

he obtained no greater right, as against the mortgagee, in the premises than he had as mortgagor. It follows that the receiver in this case was entitled to take the crop of corn planted on the mortgaged premises in the year 1926 and which was standing unsevered on the land at the time the receiver was appointed and at the time he took possession of the premises. Appellee by the chattel mortgage from Mulcahey took no right in or to the corn, because Mulcahey had no right or title therein as against the receiver.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to render a decree in accordance with the holding of this court.

*Reversed and remanded.*