Robert E. Brand, Appellee, v. George C. Schmitz and Louise Rowen Schmitz, Appellants.

Gen. No. 39,510.

Opinion filed December 15, 1937.

PACKARD, BARNES, McCAUGHEY & SCHUMACHER, of Chicago, for appellants; RUSSELL J. McCAUGHEY, of counsel.

ERIC F. GRUNDIN, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment for $15,275.87, entered against defendants in the above entitled cause.

Robert E. Brand, plaintiff appellee, on April 23, 1936, confessed judgment against George C. Schmitz and Louise Rowen Schmitz, defendants appellants, on certain mortgage bonds in the aggregate of $15,275.87, and the defendants thereafter on May 20, 1936, made a motion to open the judgment and were given leave to appear, plead and defend and to file a counterclaim in equity. The counterclaim in equity was filed and when the matter came on for hearing the trial judge permitted the law case and the counterclaim in equity to be tried at the same time. The issues involved were tried without a jury. The cause was heard by the court upon an agreed statement of facts made orally together with certain documentary proof. The court entered a decree denying the prayer of the counterclaim in equity and decreed that the judgment as confessed on April 23, 1936, rendered against the defendants for $15,275.87, stand in full force and effect as of the date of rendition of judgment and that plaintiff have execution against defendants for said judgment together with costs and charges.

The facts and circumstances in this case are rather involved, but we shall set forth the pertinent points:

In the year 1924, the defendants George C. Schmitz and Louise Rowen Schmitz were the owners of a fee title of a certain lot located in the City of Chicago, known as 1017–1021 North Dearborn street, upon which they built a hotel; that the defendants secured a construction loan in the sum of $200,000, of which the bonds being sued on in this present suit are a part. The bonds were signed individually by the defendants. The hotel was called "The Walton Hotel" and the bond issue was known as "The Walton."

In 1926 the defendants sold the hotel business, together with title to the real estate, to a corporation known as the Brons Hotel Company. The properly recorded deed by which the transaction was carried

out contained no language by which the Brons Hotel Company assumed liability for the mortgage.

In November, 1927, the Brons Hotel Company sold to Alice Olhausen, and the deed of conveyance of title recited, ''Subject to trust deed dated June 10, 1924,'' . . . The trust deed therein referred to is the trust deed given to secure the bonds in question.

In August, 1935, Alice Olhausen, by quitclaim deed, conveyed the property in question to Walton Hotel Company, a corporation organized by her and a few others. This last named deed contained the following:

''Subject to balance due on bonds secured by trust deed dated June 10, 1924, and recorded in the Recorder's Office of Cook County, Illinois, on June 13, 1924, as Document No. 8465892, which said indebtedness the grantee hereby assumes and agrees to pay.''

Approximately 30 days later, on September 24, 1935, the Walton Hotel Company filed a petition in the District Court of the United States for the Northern District of Illinois, eastern division, No. 61,363, under section 77B of the Federal Bankruptcy Law, seeking reorganization.

The bonds were in default a considerable time prior to the transfer of the Walton Hotel Company, in fact, a bill of foreclosure had been filed in the circuit court of Cook county entitled, *''The Chicago Title and Trust Company, Trustee, etc. v. George C. Schmitz, et al. No. B-215617,''* and a decree of foreclosure and sale was entered therein on June 11, 1932. The property has not been sold under that decree. That suit is still pending and undisposed of.

In the petition under section 77B of the Federal Bankruptcy Law, the debtor corporation informed the United States District Court that all the bonds had matured and were due and payable, that it did not have sufficient working capital and was too heavily indebted to do business with its present financial struc-

ture; that it then suggested to the court that a simple, general, complete, satisfactory organization of the affairs of the debtor was possible and that no other court, without the powers of the United States District Court, would have the power to stay individual bondholders from exercising their liens. By the exercise of its power the courts can unify, simplify and make more harmonious the treatment of the situation pending a proper reorganization of the company's affairs (viz. its mortgage indebtedness), and facilitate the preparation, consideration and effectuation of such a reorganization.

Among other things, the petition prayed for the appointment of a trustee and the granting of power and authority in the trustee as a receiver in equity, to operate the business, that the trustee be given the power to issue trustee's certificates for operation expenses. It also requested the rejection of contracts of the debtor which were not beneficial to the estate, for reasonable time within which the claims and interests of creditors and shareholders might be filed, and for stay orders against the debtor corporation upon a claim from which a discharge would be a release and enjoin or stay the commencement or continuance of suits against the debtor corporation until after the final decree.

An order was entered in that proceeding approving the filing of the petition as having been filed in good faith, and at the same time a stay order was entered on October 7, 1935, which provided that "all creditors, bondholders, stockholders, noteholders and trustees, and all other persons claiming or acting by, through or under them, and their officers, agents, attorneys, representatives, servants and employees are enjoined and restrained from instituting or prosecuting any action at law or suit or prosecution in equity against the said debtor in any court of law or equity." The

stay order was entered several months prior to the filing of the suit with which we are presently concerned.

A temporary trustee was appointed in that proceeding and he reported to the Federal court, among other things, that there was an indebtedness of $155,500 with interest from June 10, 1929, "represented by Serial 7% Gold Bonds dated June 10, 1924, executed by George C. Schmitz and Louise Rowen Schmitz, his wife, and indebtedness thereof assumed by the debtor corporation herein, is still outstanding and unpaid.

The summary of assets is given as follows: "Cash, $4,446.36; tax warrants, $275; judgment notes, $568.88; furnishings, unknown, and real estate, present value $157,500; or a total of $162,790.24.

"A plan of reorganization as amended and supplemented was filed on December 9, 1935, by the attorney for the debtor corporation."

The plan of reorganization provided, in general, for the formation of a new corporation to own the premises free and clear of all claims except taxes and expense of reorganization; that the present unpaid, uncanceled and outstanding first mortgage bonds (of which the bonds upon which judgment was entered herein were a part) shall be canceled and the unpaid, uncanceled and outstanding interest coupons and the first mortgage bonds shall be canceled and turned over to the company and the trust deed upon the premises released; that the new corporation shall have a stated capital of $200,000, consisting of 2,000 shares of common, no par, stated value of $100 per share; that each bondholder shall receive stock, one share for each $100 of principal now held by them of first mortgage bonds; that the old corporation, that is the debtor, is to receive 200 shares of stock in the new corporation in exchange for conveyance of title in settlement of all interests of the debtor; that the new company will receive all the personal property upon giving Margaret Olhausen

150 shares of stock of the new corporation in payment for the furniture and fixtures.

The bonds upon which judgment was confessed in this case had all been made the subject matter of a proof of claim in that bankruptcy proceeding, each one bearing the legend: "Proof of claim respecting this instrument has been filed in that certain cause pending in the District Court of the United States, for the Northern District of Illinois, Eastern Division, entitled, 'In the Matter of the Walton Hotel Company, corporation, Debtor, In Bankruptcy 61363.' No additional or other proof of claim in respect to this instrument may be filed in said proceedings. Charles A. McDonald, Special Master."

The foreclosure suit in the State court had been carried through to a decree of sale but the sale has not yet been held. There was no personal service or attempt to get personal service on the two defendants here, Louise Rowen Schmitz and George C. Schmitz.

On the motion to set aside the judgment and their prayer for equitable relief, defendants admit the execution of the bonds and stated, however, that they had been released from liability thereon because of the suit pending in the United States court; that the bonds had been filed in the United States Court under the plan of reorganization and that that court had entered an order on October 7, 1935, that: ". . . all creditors, bondholders, stockholders, noteholders and trustees, and all other persons claiming or acting by, through or under them, and their officers, agents, attorneys, representatives, servants and employees, were enjoined and restrained from instituting or prosecuting any action at law or suit or prosecution in equity against the said debtor in any court of law or equity;"

The substance of defendants' defense is that because the Walton Hotel Company filed a plan of re-

organization under section 77B on December 9, 1935, in the United States District Court; that the Walton Hotel Company is liable to these defendants, George C. Schmitz and Louise Rowen Schmitz upon its undertaking to be responsible for the bonds; that they have been released and discharged from the liability, or in the alternative they argue that their liability upon said bonds is only to the extent and in the event that said reorganization under section 77B fails, or that the price realized from the sale under the foreclosure proceeding is inadequate to satisfy said bond issue, or upon a proper deficiency decree which may be entered in said foreclosure proceeding. In fact they pray in the cross complaint that the judgment be vacated and declared null and void, or in the alternative that the execution be stayed until such time as the proceeding in the United States District Court have been concluded; also that execution be stayed until a sale may be held under the foreclosure proceedings and that the amount realized from said sale be shown to be adequate to satisfy said bond issue, or until a proper deficiency decree shall be entered in said proceedings and for other relief.

Plaintiff denies that defendants are entitled to any relief and that the mere pending of the suit of the Walton Hotel Company in the United States court does not prevent him from proceeding against the personal liability of the defendants.

Plaintiff who is the owner of a bond may, unless prohibited by the terms of the trust deed, obtain relief not only by foreclosure but may commence suit at law on the note against the makers.

In *Rohrer v. Deatherage*, 336 Ill. 450, it was said: "Upon default in the condition of the mortgage the mortgagee has the right to possession against the mortgagor, his grantee, lessee or anyone claiming under him by any right. In such case the mortgagee

has several remedies which he may pursue to enforce the payment of his debt. He may sue the mortgagor in assumpsit for a judgment upon the personal obligation; he may sue in equity for the foreclosure of the mortgage; or he may recover the possession of the mortgaged property by an action of ejectment. These remedies are concurrent or successive, as the mortgagee may deem proper, and he may pursue any two or all three of the remedies simultaneously.''

Defendants contend that the proceeding in the United States court should prevent the plaintiff from further proceeding against them on their personal liability on the bonds and that the State court should aid defendant by compelling plaintiff by an injunctive order, the effect of which would be to make plaintiff wait until the decision is reached in the Federal court, in order to determine how much, if any credit, was to be allowed on said bonds.

In support of its contention defendants cite the case of *Barnett v. Gitlitz,* 290 Ill. App. 212, wherein an opinion was filed on May 4, 1937, by the second division of this court and a rehearing was denied on May 18, 1937. That case is somewhat similar to the case at bar, but it differs in a very material way as evidenced by the language used by the court on page 217:

''This appeal raises the following question: Where the United States District court, under its bankruptcy powers, and particularly under section 77B of the Bankruptcy Act, has, in a reorganization proceeding pending in that court, ordered a satisfaction of the decree entered in the superior court case (which decree found that there was due complainant in that case as successor trustee, for and on behalf of *all* of the bondholders, the sum of $118,628.19, and that the defendants Morris Gitlitz and Mary Gitlitz, his wife, Gus Bagan and Sadie Bagan, his wife, and Dora Gitlitz, a widow, were personally liable for that amount),

and also ordered the release of the trust deed securing the bonds, and the decree of the superior court has been satisfied and released in accordance with said order, is plaintiff, who confessed judgment in the municipal court while the proceedings in the United States District court were pending, entitled to have his judgment in the municipal court remain in full force and effect, where the amount of the stock he is entitled to under the decree of the United States District court is tendered to him?''

In the *Barnett* case, *supra,* defendant contended that the satisfaction of the decree executed by Carl R. Chindblom, special master, in accordance with the decree of confirmation entered in the United States District Court satisfying the decree of sale in the Superior Court case No. 567,515, satisfied the entire indebtedness including the bonds owned by the plaintiff and did not merely release the lien against the property. The court at page 218, said: ''By an order of the United States District court the debt due on *all* of the bonds secured by the trust deed was satisfied. To sustain the position of plaintiff it would be necessary to ignore the provisions of a law of the United States and the orders and decree of the United States District court.''

The *Barnett* case, *supra,* further shows that the plan of reorganization provided that stock in the new corporation should be given to the owner of the bonds in lieu thereof, and that the same had been tendered to the owner of the bonds in that case and had been deposited as a tender for him in lieu of the bond.

In the instant case no such order has been entered. The case is pending in the Federal Court and is somewhat similar as to the plan to reorganize, but no action has been taken thereon nor have we any knowledge as to what action may be taken or when. Manifestly, if no further action of approval or decree is entered in that case, it would have no effect upon the

primary liability of the defendants in this case. To deny plaintiff the right to proceed to collect upon the bonds would not in our opinion be an equitable procedure as there is no equitable consideration therefor. Should the defendants be compelled by legal procedure to pay the full amount of their notes upon which they are liable they would then become subrogated to the rights of the owner of said bonds for any claim which might arise on anything that is realized either in the foreclosure proceedings or in the Federal Court in the bankruptcy proceedings. As before stated we do not think defendants are entitled to have the present proceedings delayed until the happening of such future event. Defendants' primary obligation is to pay the notes and, as before stated, what will be received from the future disposition of the assets of the defunct corporation in the Federal Court is a matter that only the passage of time will disclose.

For the reasons herein given the judgment of the superior court and the order in equity denying the delay asked for by defendants is hereby affirmed.

*Judgment and decretal order affirmed.*

HEBEL, P. J., and HALL, J., concur.