Chicago Title and Trust Company, Plaintiff, v. Irene M. Watson et al., Defendants.
Appeal of Albert J. Peterson and 5500 Everett Building Corporation, Appellants, v. Earl C. Leonard, Receiver, Appellee.

Gen. No. 41,309.

Heard in the second division of this court for the first district at the June term, 1940. Opinion filed November 28, 1941.

Sabath, Perlman, Goodman & Rein and Max W. Petacque, all of Chicago, for appellants.

Henry E. Ayers and Gregory A. Gelderman, both of Chicago, for appellees; Clyde C. Fisher, of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

In a proceeding filed in 1933 to foreclose a second mortgage on property at 5500–02 Everett avenue and 1719 E. 55th street, Chicago, improved with a three-story brick building containing fifteen apartments, Earl C. Leonard was appointed receiver. Thereafter in July 1934, Chicago Title & Trust Company, as trustee, filed a complaint to foreclose a first mortgage on the same premises, alleging default in the payment of bonds aggregating $62,000. The following month the court entered an order extending the existing receivership to the first mortgage proceedings and di-

recting Leonard as receiver to segregate and hold apart all moneys paid to him for the benefit of the Chicago Title & Trust Company, as trustee, and the holders and owners of the indebtedness secured by the trust deed. Irene M. Watson was the owner of the equity and a sister of Earl C. Leonard, the receiver. Shortly prior to the foreclosure sale the owner of the equity, Mrs. Watson, assigned and transferred her equity in the premises to the 5500 Everett Building Corporation, which had been incorporated pursuant to a plan of reorganization. Albert J. Peterson, who was made a party to the complaint of the Chicago Title & Trust Company, filed his answer admitting the allegations thereof and joining in the prayer for foreclosure. Leonard continued in possession as receiver during the pendency of the proceeding, from August 13, 1934, to February 21, 1939, and during this period collected the rents, issues and profits as directed by the court. Shortly after the equity of redemption was assigned and transferred to the 5500 Everett Building Corporation, the chancellor directed Leonard as receiver to file his final report and account, and upon presentation thereof to the court various objections were interposed by Albert J. Peterson and the corporation. None of these objections, except one, is the subject of controversy in this proceeding. This appeal, prosecuted by Peterson and the corporation, arises from a ruling of the chancellor sustaining objection No. 5 and surcharging Leonard with the sum of $1,000 for rents collected from James C. Barnes, a tenant in the building during the period of receivership. The actual rental paid by Barnes during this period was $3,025, and appellants contend that the receiver should have been surcharged with the entire amount.

There is substantially no dispute as to the essential facts. Barnes and his wife occupied the apartment in question during the period of receivership, and ac-

tually paid $3,025 rental therefor. At times the rent was collected by Irene M. Watson, the owner of the equity, but during most of the period the rent was paid to the receiver, who takes the position that before sale the owner of the equity is entitled to the rent of one apartment, free, until a deficiency decree is entered. This contention is predicated upon what counsel characterizes as "the custom and established practice of this court." While it is true that during the unprecedented period of foreclosure that existed in the depression years, the courts frequently allowed the owner of the equity to occupy an apartment in a building under foreclosure, before sale, rent free, this practice was not followed in all cases. No authority is cited in justification of the practice and we know of no cases which hold that the equity owner has such rights as a matter of law. However, that question is not of controlling importance because as a matter of fact Mrs. Watson did not occupy the apartment in question; it was occupied and paid for by Barnes, who attorned either to the receiver or to Mrs. Watson for the fair and reasonable rental thereof, and presumably the proceeds came into the hands of the receiver who is chargeable with an accounting therefor. The argument that if Mrs. Watson had occupied the apartment the receiver would not have been obliged to account for the rent, but would have been justified in allowing her to remain there without payment is beside the point.

The trust deed in question conveyed the rents, issues and profits of the mortgaged premises as security for the mortgage debt, and provided that "Upon or at any time after the commencement of any proceeding instituted in case of default, the court . . . shall, upon application of complainant, as a matter of strict right and without regard to the then value of the mortgaged premises and without regard to the solvency of mortgagor or of any other party liable hereunder or

the then use of mortgaged premises, appoint a receiver of the mortgaged premises and the rents, issues and profits thereof, pending foreclosure and sale and during the period of redemption, and mortgagor hereby irrevocably consents to such appointment and waives the giving of any notice or bond by the applicant for receiver.'' Under that provision of the trust deed and by the appointment of a receiver the court sequestered the rents of the entire mortgaged premises pending the foreclosure proceeding, and it became Leonard's duty as receiver to collect the rents from all the apartments, including that occupied by Barnes, and account therefor, for the benefit of the bondholders. The indebtedness secured by the trust deed, as found in the foreclosure decree, amounted to $83,392.60. The foreclosure sale of the premises yielded only $7,000, leaving a deficiency of $76,392.60 available to the bondholders, who were the real parties in interest.

Brushing aside the extraneous matters argued in the briefs, we find no justification for the chancellor's order, and no cases are cited to sustain the receiver's position. In ruling on objection No. 5 to the receiver's report, the court was evidently of opinion that the rental from the Barnes apartment belonged to the receivership estate and that the receiver was accountable therefor, but instead of surcharging Leonard with $3,025, which was the actual amount collected by him from Barnes during the period of the receivership, the chancellor arbitrarily fixed the amount with which Leonard was to be surcharged at $1,000, and made the following comment on his ruling: ''I am inclined to rather make a short cut of this, and if the Appellate Court wants to wonder just how I arrived at the amount, they will have to wonder, or reverse it, or do what they want, because sometimes I just cannot take the time to go into all the various things that might make an exact sum, even on the basis I am figuring. It is a rather general reaction I have to the whole

thing, and the figure I have got in mind that I think he should be held liable for to the estate out of this claim of three thousand dollars is one thousand dollars. That is just taking an arbitrary figure, assuming the estate might have had nothing if she had lived in the apartment, but the receiver gained nothing from having it paid to her. She was the gainer, just how much I cannot say. . . .''

Having determined that the receiver was liable, we know of no reason why he should not be surcharged with the entire amount collected from Barnes. A receiver appointed to collect the rents from the mortgaged premises must account for all rents collected by him or which by the exercise of reasonable diligence he could have collected, and where he wrongfully failed to collect rent from the tenant of premises he will be surcharged with the amount which he failed to collect. (*Tenth Nat. Bank of Philadelphia v. Smith Const. Co.*, 242 Pa. 269; Clark on Receivers (2d Ed. 1929), vol. 1, par. 390, p. 506, par. 419, p. 569.)

During the pendency of this cause in the Appellate Court a motion was here made by the receiver to dismiss the appeal on the ground that neither of the appellants has any interest in the subject matter or in the proceeds of the receivership estate. As hereinbefore stated, Peterson was made a party to the proceeding and filed his answer, and therefore had a right to interpose objections to the receiver's report. 5500 Everett Building Corporation became the owner of the equity of redemption through assignment, and therefore was entitled to the proceeds in the receiver's hands. Moreover, the contention that these two appellants have no interest in the subject matter was not urged before the chancellor, but is made for the first time on appeal; therefore, the motion to dismiss the appeal, which was reserved to hearing, is now denied.

Because of the conclusions reached herein the order of the superior court is reversed and the cause is remanded with directions to order the receiver to account for the sum of $3,025.

*Order reversed and cause remanded with directions.*

SCANLAN, P. J. and SULLIVAN, J., concur.