## In re CADWELL'S CORNERS PARTNERSHIP, Debtor.

### Bankruptcy No. 94 B 17359.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 17, 1994.

John D. Lien, Bradley S. Block, Foley & Lardner, Chicago, IL, for Massachusetts Mutual Life Ins. Co.

Daniel A. Zazove, Siegan, Barbakoff, Gomberg & Kane, Chicago, IL, for the receiver.

Mark S. Lieberman, Joseph A. Baldi, Rosenthal & Schanfield, Chicago, IL, for debtor Cadwell's Corners Partnership.

### MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

The Debtor, Cadwell's Corners Partnership (the "Debtor" or "Cadwell's") is the owner of a strip shopping center subject to a first mortgage and assignment of rents held by Massachusetts Mutual Life Insurance Company ("Mass Mutual"). Upon default by the Debtor, Mass Mutual obtained the appointment of a receiver in a state court foreclosure action. Soon thereafter, the Debtor filed this Chapter 11 case. The Debtor now requests this Court to direct the receiver to turnover the subject property pursuant to Bankruptcy Code section 543,[1] for an accounting of rents and profits, and for authority to use cash collateral. In response, Mass Mutual contends that rents from the Debtor's property are not property of the estate and, therefore, the Debtor cannot use these proceeds to fund a plan of reorganization. Mass Mutual thus requests this Court to excuse the receiver from turning over the

---

1. Unless otherwise indicated, all statutory citations refer to the pre-amended version of the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330 (amended by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (enacted October 22, 1994)), which applies to this bankruptcy case.

property[2] and to modify the automatic stay or, in the alternative, to dismiss the case. For the reasons stated below, this Court finds that postpetition rents generated from the Debtor's Property constitute cash collateral and relief from the automatic stay shall be granted due to Debtor's inability to propose a successful plan of reorganization.

## I. BACKGROUND

The Debtor is an Illinois limited partnership and is the beneficial owner of Cadwell's Corners Shopping Center (the "Property"), the Debtor's sole asset, located at 3–57 North Waukegan Road, Deerfield, Illinois. Legal title to the Property is held by American National Bank & Trust Company of Chicago as Trustee under Trust No. 48023, dated October 1, 1979. Debtor is the sole beneficiary of the land trust. The Debtor's principal business consists of owning and operating the Property, a strip shopping center with approximately 89,000 square feet of gross leasable space. The Debtor and Mass Mutual have stipulated that, for purposes of these hearings, the value of the Property is $7 million. The general partners of the Debtor are Salvatore C. Buccola and James Di Pietro.

Mass Mutual holds a first mortgage on the Property secured by a nonrecourse Amended and Restated Promissory Note and Mortgage, Security Agreement and Financing Statement. Mass Mutual's loan is also secured by a separate Assignment of Leases and Rents, granting Mass Mutual an interest in the rents from and leases of space in the Property.[3] The amended note refinanced the original note and mortgage agreement. The original note, mortgage agreement and assignment of leases and rents is dated November 1, 1982. The amended note, mortgage and assignment of leases and rents is dated March 21, 1988. Mass Mutual properly recorded the original mortgage and assignment of rents in Lake County, Illinois on November 12, 1982. The amended mortgage and assignment of rents were recorded on April 8, 1988. The amended note matured, as extended, on February 1, 1994. The amounts due under the amended note presently remain unpaid by the Debtor.

Mass Mutual filed a foreclosure and receivership action against the Debtor on February 7, 1994, in the Circuit Court of Lake County, Illinois, Case No. 94–CH–86. Mass Mutual's foreclosure complaint alleges that the unpaid principal balance of the amended note is $7,770,064.86, and that the total amount due as of February 4, 1994 was $7,849,546.14. On February 23, 1994, the state court entered an order appointing C. Michelle Panovich ("Receiver") as the receiver for the Property. Pursuant to the state court's order, the Receiver was authorized to manage the Property, collect rents from tenants, pay taxes and other necessary expenses, and negotiate and execute proposed leases. The Receiver was further authorized to employ Mid–America Asset Management Company to manage the Property for a fee not to exceed four percent of gross rents collected. The Receiver has been managing the Property since February 23, 1994 until the present.

On August 30, 1994, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 20, 1994, Mass Mutual filed a proof of claim, alleging a secured claim in the amount of $8,653,747.35, plus fees and costs. Debtor filed an objection to Mass Mutual's claim on October 4, 1994, asserting, among other things, that Mass Mutual improperly included a default rate of interest, late charges, unreasonable attorneys' fees and costs, accelerated accrued interest, and interest on interest. The actual value of Mass Mutual's

---

**2.** The Receiver, appointed by the state court in the mortgage foreclosure proceeding instituted by Mass Mutual against the Debtor, joined in Mass Mutual's motion to excuse the receiver from compliance with Bankruptcy Code section 543 and filed a memorandum in support thereof. For purposes of this opinion, however, this Court will consolidate the joint motions and refer only to Mass Mutual's motion to excuse the receiver from compliance.

**3.** Paragraph 12(d) of the original Mortgage, Security Agreement and Financing Statement (as incorporated by the Amended and Restated Promissory Note, Section VI, Paragraph 4(iii) and Section VII, Paragraph 7), further evidences an assignment of leases and rents of the Property.

claim has not yet been determined. But, according to a letter from Mass Mutual dated June 24, 1993, which was presented by the Debtor as evidence in this matter, the Debtor's balance on the Mass Mutual loan was $7,776,400 as of December 1, 1993. Furthermore, Mr. Buccola testified that no loan payments were made to Mass Mutual after February 1994. In addition, Debtor's objection to Mass Mutual's claim does not quantify the amount to which Debtor objects, nor does the Debtor suggest what the balance on the Mass Mutual loan might be. Accordingly, given the accruing late fees and interest charges, Mass Mutual's claim is well over $7 million.

## II. JURISDICTION

This Court's jurisdiction derives from 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This proceeding is a core matter under 28 U.S.C. § 157(b)(2)(A), (E), (G), and (M).

## III. ANALYSIS

### A. Rents as Cash Collateral

Mass Mutual asserts in its motions to excuse the receiver from turnover and to modify the automatic stay that the Debtor has no funds available to reorganize because future rents from the mortgaged Property are not property of the estate. Both motions ultimately turn on whether rents from Debtor's Property are cash collateral pursuant to section 363 of the Bankruptcy Code and, consequently, property of the estate as defined in section 541 of the Code. If the rents are cash collateral, then the Debtor may use the rents to fund a proposed plan of reorganization, provided that Mass Mutual's interest in the rents are adequately protected. If the rents are not cash collateral, but rather Mass Mutual's property, then the Debtor must demonstrate that there are alternative sources available with which to achieve an effective reorganization. Thus, the Court will address the cash collateral issue first.

Mass Mutual asserts that the prepetition appointment of the Receiver perfected Mass Mutual's assignment of leases and rents and,

therefore, the Debtor had no interest in present or future rents generated from the Property at the time the bankruptcy petition was filed. Mass Mutual thus claims that rents from the Property are not cash collateral under section 363, and cannot be used by the Debtor to fund a plan of reorganization.

Section 552(b) of the Bankruptcy Code provides that a prepetition security interest can extend to postpetition rents to the extent that such security interest has been perfected under applicable state law. *See Butner v. United States*, 440 U.S. 48, 52, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In turn, proceeds included under section 552(b) are, pursuant to section 552(b), subject to section 363, and may be treated as cash collateral under section 363(a), which permits a trustee or debtor in possession to use such proceeds if adequate protection for the secured creditor's interest is provided. The central issue, therefore, is whether the Debtor's estate has any interest in rents of the mortgaged Property.

To determine the competing interests of the Debtor and Mass Mutual in rents generated from the mortgaged Property, this Court must look to applicable state law, in this case Illinois law, to determine whether, as of the date of the petition, the Debtor's interest had been terminated prepetition. *See Butner*, 440 U.S. at 55, 99 S.Ct. at 918. A brief history of Illinois mortgage law will be useful to this determination.

#### 1. *Illinois Mortgage Law*

There are two divergent theories of mortgages, title theory and lien theory. Jurisdictions which follow the title theory adhere to the common law precept that the execution of a mortgage conveys legal title to the mortgaged property to the mortgagee during the pendency of the mortgage and the mortgagor only holds equitable title. *See Harms v. Sprague*, 105 Ill.2d 215, 222, 85 Ill.Dec. 331, 334, 473 N.E.2d 930, 933 (1984); *Ortengren v. Rice*, 104 Ill.App. 428, 431 (1st Dist. 1902). Lien theory jurisdictions, however, follow the rule that a mortgage is merely a lien on the property rather than a conveyance of title from the mortgagor to the mortgagee. *See Harms*, 105 Ill.2d at 222, 85

Ill.Dec. at 334, 473 N.E.2d at 933. Early Illinois caselaw generally followed an intermediate version of the title theory of mortgages. *See, e.g., Van Antwerp v. Horan,* 390 Ill. 449, 453–54, 61 N.E.2d 358, 360 (1945) (stating that "[t]he giving of a mortgage conveys title as between the mortgagor and mortgagee"); *Rohrer v. Deatherage,* 336 Ill. 450, 454, 168 N.E. 266, 268 (1929) (same). These early cases, however, recognized that the "title" which the mortgagee held was anomalous and existed only as between the mortgagor and mortgagee as security for the debt for which the property was pledged. For example, the Illinois Supreme Court in *Rohrer v. Deatherage,* 336 Ill. 450, 168 N.E. 266 (1929), explained that, "[w]hile a mortgage conveys a title as between the mortgagor and the mortgagee, it is only a qualified title as security for the creditor during the existence of the debt, and the mortgagor is regarded as the owner of the land for all beneficial purposes, subject only to the rights of the mortgagee." 336 Ill. at 454, 168 N.E. at 268.[4]

In 1984, the Illinois Supreme Court in *Kling v. Ghilarducci,* 3 Ill.2d 454, 121 N.E.2d 752 (1954), implicitly overruled this particular portion of the *Rohrer* decision, and held that a mortgage does not convey title, qualified or otherwise, to the mortgagee. The *Kling* court stated:

> In Illinois the giving of a mortgage is not a separation of title, for the holder of the mortgage takes only a lien thereunder. After the foreclosure of a mortgage and until delivery of the master's deed under the foreclosure sale, purchaser acquires no title to the land either legal or equitable. Title to land sold under mortgage foreclosure remains in the mortgagor or his grantee until the expiration of the redemption period and conveyance by the master's deed.

3 Ill.2d at 460; 121 N.E.2d at 756 (citations omitted).[5] Other cases subsequent to *Rohrer* also affirmed the lien theory of mortgages in Illinois.[6]

The rule enunciated in *Kling* and *Harms, supra,* that a mortgage does not convey legal or equitable title to the mortgagee, was subsequently codified in the Illinois Mortgage Foreclosure Law, which defines a "mortgage" as:

> [A]ny consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation. The term 'mortgage' includes, without limitation ... every deed conveying real estate, although an absolute conveyance in its terms, which shall have been intended only as a security in the nature of a mortgage.

735 ILCS ¶ 5/15–1207 (1992) (originally enacted on July 1, 1987; amended on Nov. 23, 1987). Moreover, even a judgement of foreclosure does not cause title to pass to the mortgagee, but only creates a lien in favor of the mortgagee. *In re Josephs,* 93 B.R. 151, 155 (N.D.Ill.1988); *see* 735 ILCS ¶ 5/15–1506(i) (1992). The mortgagor retains title to the mortgaged property until the court enters an order confirming the foreclosure

---

4. *See also Harms,* 105 Ill.2d at 222, 85 Ill.Dec. at 334, 473 N.E.2d at 933; *Carter Oil Co. v. Durbin,* 376 Ill. 398, 404, 34 N.E.2d 407, 410, *cert. denied sub nom., Koeberlein v. Durbin,* 314 U.S. 644, 62 S.Ct. 85, 86 L.Ed. 517 (1941); *Lightcap v. Bradley,* 186 Ill. 510, 522–23, 58 N.E. 221, 224 (1900); *Ortengren,* 104 Ill.App. at 431; *McLester v. Rose,* 104 Ill.App. 433, 436 (1st Dist.1902).

5. The Illinois Supreme Court further held that once a mortgagee acquires title to the property through a foreclosure sale, the title relates back to the time of the execution of the mortgage, thus cutting off all intervening transfers or liens. *Kling v. Ghilarducci,* 3 Ill.2d at 461, 121 N.E.2d at 756–57.

6. *See Harms v. Sprague,* 105 Ill.2d 215, 85 Ill. Dec. 331, 473 N.E.2d 930 (1984); *Department of Transportation v. New Century Engineering & Development Corp.,* 97 Ill.2d 343, 73 Ill.Dec. 538,

454 N.E.2d 635 (1983); *Kerrigan v. Unity Savings Association,* 58 Ill.2d 20, 317 N.E.2d 39 (1974); *Board of Directors v. Secretary of Veterans Affairs,* 226 Ill.App.3d 281, 168 Ill.Dec. 361, 366, 589 N.E.2d 761, 766 (1st Dist.1992); *Kelley/Lehr & Associates, Inc. v. O'Brien,* 194 Ill.App.3d 380, 386–87, 141 Ill.Dec. 426, 430, 551 N.E.2d 419, 423 (2d Dist.1990); *Mutual Life Insurance Co. of New York v. Chambers,* 88 Ill.App:3d 952, 955, 43 Ill.Dec. 829, 832, 410 N.E.2d 962, 965 (1st Dist. 1980); *see also Scott v. O'Grady,* 760 F.Supp. 1288, 1297 (N.D.Ill.1991), *aff'd on other grounds,* 975 F.2d 366 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993); *Matter of Clark,* 738 F.2d 869, 871 (7th Cir.1984) (finding that, under the law of Wisconsin, a lien theory state, "[n]either equitable nor legal title [to the mortgaged property] passes until the foreclosure sale is held").

sale and issues the deed, at which time title passes to the mortgagee (assuming that the mortgagee is the purchaser). *Josephs*, 93 B.R. at 155; *Kling*, 3 Ill.2d at 460, 121 N.E.2d at 756; 735 ILCS ¶¶ 5/15–1508, 5/15–1509 (1992).

 Under Illinois Mortgage Foreclosure Law, a mortgage lien is created upon recording of the mortgage with the recorder of deeds. 735 ILCS ¶ 5/15–1301 (1992); *State Bank of Lake Zurich v. Winnetka Bank*, 245 Ill.App.3d 984, 990, 185 Ill.Dec. 421, 425, 614 N.E.2d 862, 866 (2d Dist.1993). Although a statutory lien is not created until recordation, the conveyance of a mortgage alone provides the mortgagee with an equitable lien which is recognized under Illinois law. *See Lohmeyer v. Durbin*, 206 Ill. 574, 580, 69 N.E. 523, 525 (1904); *First National Bank v. Hans*, 143 Ill.App.3d 1033, 1036, 98 Ill.Dec. 150, 152, 493 N.E.2d 1171, 1173 (2d Dist.1986). As this Court has noted in *In re Cutty's–Gurnee, Inc.*, 133 B.R. 934 (Bankr. N.D.Ill.1991), an equitable mortgage lien serves as security for a specific debt, but does not sever title to the pledged property. *Id.* at 945.

### 2. *Assignments of Rent Under Illinois Mortgage Foreclosure Law*

 In cases of nonresidential real property, a mortgage often includes an as-

signment of rents which creates a lien on rents and profits generated from the mortgaged property as additional security for the debt. *See In re Wheaton Oaks Office Partners Limited Partnership*, 27 F.3d 1234, 1243 (7th Cir.1994); *McLester v. Rose*, 104 Ill.App. 433, 436 (1st Dist.1902). Illinois law recognizes that a mortgagee holding a lien on rents of the mortgaged property has the right to collect the rents upon default. *Wheaton Oaks*, 27 F.3d at 1242. But the mortgagee's right to collect rents is not automatic. Before the mortgagee is entitled to collect rents, the mortgagee must first obtain possession of the mortgaged property. Because the right to collect rents in Illinois is incident to possession of the real property from which they generate, possession is a requisite precondition to a mortgagee's right to enforce its lien.[7] Consequently, in the event of default, the mortgagor is entitled to continue collecting the rents until the mortgagee gains possession of the property generating the rents. *Wheaton Oaks*, 27 F.3d at 1241; *Monarch*, 153 B.R. at 832–33; *Rohrer*, 336 Ill. at 454, 168 N.E. at 268; *De Kalb Bank*, 166 Ill.App.3d at 710, 520 N.E.2d at 961; *Levin v. Goldberg*, 255 Ill.App. 62, 65 (1st Dist.1929); *Taylor*, 239 Ill.App. at 574.[8]

 Generally, a mortgagee holding an assignment of rents can obtain prefore-

**7.** *See Wheaton Oaks*, 27 F.3d at 1241; *In re Bellevue Place Associates*, 1994 WL 612328 at *16 (Bankr.N.D.Ill. Nov. 1, 1994); *Williams v. Marmor*, 321 Ill. 283, 287–88, 151 N.E. 880, 882 (1926); *De Kalb Bank v. Purdy*, 166 Ill.App.3d 709, 710, 117 Ill.Dec. 606, 610, 520 N.E.2d 957, 961 (2d Dist.1988); *Shinnick v. Goodman*, 259 Ill.App. 107, 114–15 (1st Dist.1930); *Taylor v. Osman*, 239 Ill.App. 569, 574 (2d Dist.1926); *accord Teal v. Walker*, 111 U.S. 242, 248, 4 S.Ct. 420, 423, 28 L.Ed. 415 (1884) (finding that "the mortgagee is not entitled to demand of the owner of the equity of redemption the rents and profits of the mortgaged premises until he takes actual possession").

**8.** Because possession is fundamental to the ability to collect rents, some courts perceive the nature of an assignment of rents differently than the mortgage on the property itself. A few Illinois cases have held that an assignment of rents does not provide the mortgagee with a lien on rents, but merely gives a mortgagee the right to enforce the assignment by taking steps to obtain possession of the property. *See In re J.D. Monarch Development Co.*, 153 B.R. 829, 832–33

(Bankr.S.D.Ill.1993); *De Kalb Bank*, 166 Ill. App.3d at 710, 117 Ill.Dec. at 610, 520 N.E.2d at 961. The Seventh Circuit in *In re Wheaton Oaks Office Partners Limited Partnership*, 27 F.3d 1234 (7th Cir.1994), however, determined that a mortgage which includes an executed but unenforced assignment of rents creates an equitable lien from the date of execution in favor of the mortgagee which is "a sufficient 'lien' on the rents to constitute a pre-petition 'security interest' under § 552(b)." 27 F.3d at 1242–43; *accord In re Bellevue Place Associates*, 173 B.R. 1009, 1020 (Bankr.N.D.Ill.1994); *see also In re Josephs*, 93 B.R. 151, 155 (N.D.Ill.1988); *In re KNM Roswell Ltd. Partnership*, 126 B.R. 548, 553 (Bankr. N.D.Ill.1991); *In re Foundry of Barrington Partnership*, 129 B.R. 550, 557 (Bankr.N.D.Ill.1991); *Bagley v. Ill. Trust & Sav. Bank*, 199 Ill. 76, 79, 64 N.E. 1085, 1086 (1902); *Anna National Bank v. Prater*, 154 Ill.App.3d 6, 17, 107 Ill.Dec. 26, 33, 506 N.E.2d 769, 776 (5th Dist.1987). In other words, a mortgagee who has not obtained possession of the mortgaged property, and thus, is not entitled to collect the rents therefrom, still has a lien on those rents.

closure possession of the property during a foreclosure proceeding either by being placed in actual possession pursuant to court order, or by having a receiver appointed. *Wheaton Oaks*, 27 F.3d at 1241; *De Kalb Bank*, 166 Ill.App.3d at 710, 117 Ill.Dec. at 610, 520 N.E.2d at 961; *Taylor*, 239 Ill.App. at 574. Illinois Mortgage Foreclosure Law further provides that a mortgagee of nonresidential real estate can obtain preforeclosure possession or appointment of a receiver only if the express language of the mortgage agreement so provides. 735 ILCS ¶¶ 5/15–1701(b)(2), 5/15–1702(a), 5/15–1704(a) (1992); *see Wheaton Oaks*, 27 F.3d at 1241; *Home Life Insurance v. American National Bank and Trust*, 777 F.Supp. 629, 631 (N.D.Ill.1991).

In the case before this Court, the terms of the mortgage agreement and assignment of rents expressly provide that in the event of a default by Cadwell's, Mass Mutual is entitled to either demand actual possession of the Property or to have a receiver appointed to take possession. Mass Mutual obtained the appointment of a receiver and, thus, proceeded to enforce its lien. Furthermore, Mass Mutual duly perfected its lien on rents as to intervening lien creditors. Generally under Illinois law, an assignment of rents is perfected [9] as to third parties either when the mortgagee is placed in possession of the property,[10] or, pursuant to recent caselaw, upon recordation.[11] Mass Mutual duly recorded its assignment of rents

---

**9.** There is an unresolved issue between and within the various states as to whether possession is a method of perfection or a means of making a perfected (recorded) lien choate (i.e., whether possession merely "activates" or "enforces" the lien after default so that the mortgagee is entitled to collect the rents). *See, e.g., In re 5028 Wisconsin Avenue Associates Ltd. Partnership*, 167 B.R. 699, 704 (Bankr.D.C.1994) (concluding that possession makes a perfected lien choate); *KNM*, 126 B.R. at 552–53 (same); *cf. Bullard v. Turner*, 357 Ill. 279, 283, 192 N.E. 223, 225 (1934) (finding that possession is equivalent to recording as a means of perfection). *See generally* Julia Patterson Forrester, *A Uniform and More Rational Approach To Rents As Security For The Mortgage Loan*, 46 Rutgers L.Rev. 349 (1993). While Illinois caselaw does not make use of the word "choate" per se, the cases uniformly recognize the requirement that a mortgagee must either obtain appointment of a receiver or be placed in possession in order to enforce its right to collect rents from the mortgaged property. *See, e.g., Wheaton Oaks*, 27 F.3d at 1241; *Bellevue*, 173 B.R. at 1022; *Monarch*, 153 B.R. at 832–33; *Marmor*, 321 Ill. at 287–88, 151 N.E. at 882; *De Kalb Bank*, 166 Ill.App.3d at 710, 117 Ill.Dec. at 610, 520 N.E.2d at 961; *Shinnick*, 259 Ill.App. at 114–15; *Taylor*, 239 Ill.App. at 574; *see also Kelley/Lehr & Associates, Inc. v. O'Brien*, 194 Ill.App.3d 380, 387, 141 Ill.Dec. 426, 431, 551 N.E.2d 419, 424 (2d Dist.1990) (finding that a mortgage does not allow a mortgagee to collect rents because it does not give it possession, rather a passive assignment of rents becomes activated when the mortgagee does take possession).

To "perfect" a lien is to place the world on notice so that the mortgagee has an interest superior to that of third party creditors in the pledged property. Perfection thus establishes priority without a determination as to title. In Illinois, perfection may be attained through recordation or obtaining possession through foreclosure proceedings. Furthermore, a recorded

notice of foreclosure provides constructive notice of a lien on property. 735 ILCS ¶ 5/15–1503 (1992); *see In re Century Investment Fund VIII Ltd. Partnership*, 937 F.2d 371 (7th Cir.1991) (holding that the filing of a foreclosure action is sufficient to "perfect" an assignment of rents); *In re Fullop*, 6 F.3d 422, 430 (7th Cir.1993) (same). The unique nature of an assignment of rents, however, may have led some courts to misuse the word "perfect," when they were actually referring to enforcement of the right to collect rents. For example, if a mortgagee records an assignment of rents, then the lien is perfected as to intervening lien creditors (i.e., third parties are charged with constructive notice of the lien as of the recording date). *See FirstSouth F.A. v. LaSalle National Bank*, 766 F.Supp. 1488, 1489 (N.D.Ill.1991) (concluding that under Illinois law, the recording date of a mortgage controls for purposes of determining priority of liens). But as between the mortgagee and the mortgagor, the mortgagee must take the additional step of being placed in actual or constructive possession of the property before it is entitled to collect the rents.

The issue of perfection becomes critical when addressing the priority of competing liens and the "strong arm" powers of a trustee or debtor in possession under section 544 of the Bankruptcy Code. If a mortgagee fails to perfect its lien on rents, then, a trustee or debtor in possession, standing in the shoes of a hypothetical lien creditor pursuant to section 544, can avoid the lien and the mortgagee then becomes a general creditor of the estate. *Wheaton Oaks*, 27 F.3d at 1244.

**10.** *Fullop*, 6 F.3d at 430; *Prouty v. Tilden*, 164 Ill. 163, 167, 45 N.E. 445, 447 (1896); *Felt v. Crosby*, 329 Ill.App. 513, 69 N.E.2d 348 (4th Dist.1946).

**11.** *Wheaton Oaks*, 27 F.3d at 1244; *Monarch*, 153 B.R. at 832; *KNM*, 126 B.R. at 554; *Kahn v.*

and obtained the appointment of a receiver prior to the bankruptcy filing. There is no question, therefore, that Mass Mutual sufficiently perfected and enforced their security interest in the rents prepetition. Mass Mutual contends, however, that the prepetition appointment of a receiver divested the Debtor of ownership rights in the assigned rents.

### 3. Appointment of Receiver

As with title to mortgaged real property, legal title to rents remains with the mortgagor and is not conveyed to the mortgagee upon assignment.[12] Furthermore, a receiver who is appointed in foreclosure proceedings and who is authorized to collect rents does not acquire title to the rents. *In re Midwest Athletic Club*, 161 F.2d 1005, 1008–09 (7th Cir.1947). Rather the receiver's duty is to sequester the rents on behalf of the mortgagee to be used in accordance with order of the court (e.g., applied against the debt or to pay expenses or to satisfy a deficiency arising from a foreclosure sale). *See Midwest Athletic*, 161 F.2d at 1009; *Davis v. Dale*, 150 Ill. 239, 243, 37 N.E. 215, 216 (1894); *Metropolitan Life Insurance Co. v. Schwarz*, 310 Ill.App. 205, 209–11, 33 N.E.2d 934, 936–37 (1st Dist.1941). Any rents remaining in the hands of the receiver are property of the mortgagor. *Joliet Federal Savings & Loan Association v. Bloomington Loan Co.*, 131 Ill.App.2d 619, 623, 265 N.E.2d 400, 403–04 (3d Dist.1970); *Metropolitan Life*, 310 Ill.App. at 209–16, 33 N.E.2d at 936–38. Rents collected by the receiver, therefore, remain property of the mortgagor.

Under Illinois law, the appointment of a receiver does nothing more than place the rents in the custody of the court until the rights of the parties have been determined.[13] The appointment of a receiver merely denies the mortgagor-assignor the use of the rents pendente lite. But, the debtor's ownership rights in the property, and in the rents stemming therefrom, are not altered by the appointment of a receiver. *See Willows of Coventry*, 154 B.R. at 962–63; *Bleck*, 32 Ill.App.2d at 274, 177 N.E.2d at 650; *Levin*, 255 Ill.App. at 66.

In this case, the assignment of rents merely provided Mass Mutual with the right to collect rents from the Property, but did not convey title to those rents.[14] Nor did the appointment of the Receiver effect a conveyance of title to Mass Mutual. Rather, the appointment of the Receiver "did nothing more than deprive debtor its statutory right to possession of the property, ... its ownership interest continued." *Willows of Coventry*, 154 B.R. at 962–63 (citations omitted). As the Bankruptcy Court for the District of Columbia stated in *In re 5028 Wisconsin Ave. Associates Ltd. Partnership*:

> Steps taken to make choate what is otherwise an inchoate security interest in rents do not alter the character of the mortgagee's rights in the rents as security for payment of a debt. What such steps do accomplish is to allow the mortgagee to enforce the security interest and to give the mortgagee priority over subsequent judgment lien creditors in the tenants' fu-

*Deerpark Investment Co.*, 115 Ill.App.2d 121, 126, 253 N.E.2d 121, 124 (1st Dist.1969); *Travelers Insurance v. First National Bank of Blue Island*, 250 Ill.App.3d 641, 647, 190 Ill.Dec. 340, 345–46, 621 N.E.2d 209, 214–15 (1st Dist.1993); *Staley Continental v. Venterra Sales*, 228 Ill.App.3d 174, 177–78, 170 Ill.Dec. 4, 6, 592 N.E.2d 440, 442 (1st Dist.1992); *see* 765 ILCS ¶¶ 5/30, 5/31 (1992).

**12.** *See Josephs*, 93 B.R. at 155; *Foundry of Barrington*, 129 B.R. at 557; *Kling*, 3 Ill.2d at 460, 121 N.E.2d at 756; *McLester*, 104 Ill.App. at 436; 735 ILCS ¶¶ 5/15–1508, 5/15–1509 (1992); *accord 5028 Wisconsin Ave.*, 167 B.R. at 705–06 (holding that, in the District of Columbia, a lien theory jurisdiction, although rents become payable to a mortgagee with a perfected and choate assignment of rents, the ownership of the rents

remains with the mortgagor and are available as cash collateral).

**13.** *De Kalb Bank*, 166 Ill.App.3d at 711, 117 Ill.Dec. at 611, 520 N.E.2d at 962; *Bleck v. Cosgrove*, 32 Ill.App.2d 267, 274, 177 N.E.2d 647, 650 (2d Dist.1961); *Chicago Title & Trust Co. v. Watson*, 312 Ill.App. 96, 100, 37 N.E.2d 885, 886–87 (1st Dist.1941); *accord Midwest Athletic*, 161 F.2d at 1008–09 (applying Bankruptcy Act); *In re Willows of Coventry, Ltd. Partnership*, 154 B.R. 959, 962 (Bankr.N.D.Ind.1993) (applying the law of Indiana, a lien theory state); *see* 735 ILCS ¶ 5/15–1704 (1992).

**14.** The language of the Assignment of Leases and Rents is consistent with the result reached by this Court.

ture rental payments. The mortgagee's choate security interest in rents remains a security interest (albeit one with priority), not absolute ownership.

167 B.R. 699, 705 n. 8 (Bankr.D.C.1994).

### 4. *Statutory Construction*

The plain language of the Bankruptcy Code supports the conclusion that the Debtor's ownership rights in the assigned rents were not extinguished. Section 552(b) provides:

*Except as provided in sections 363,* 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added).

Section 363(a) provides:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

In addition, section 363(*l*) reads, in pertinent part:

[A] plan under chapter 11 ... may provide for the use, sale, or lease of property, *notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on* the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or *on the appointment of ... a custodian and that effects ... a forfeiture,* modification, or *termination of the debtor's interest in such property.* (emphasis added).

■■■ A court appointed receiver constitutes a "custodian" under the Bankruptcy Code. 11 U.S.C. § 101(11).[15] Pursuant to the plain language of the Code, therefore, the appointment of a state court receiver which may act to terminate a debtor's interest in rents under state law does not preclude those rents from constituting cash collateral.

The legislative history of section 552(b) also supports the conclusion that the Debtor retains an interest in assigned rents. The Legislative Statements to section 552 provide that, "[a]lthough this section grants a secured party a security interest in proceeds, product, offspring, rents, or profits, the section is explicitly subject to other sections of title 11. For example, the trustee or debtor in possession may use, sell, or lease proceeds, product, offspring, rents or profits under section 363." *Bankruptcy Code, Rules and Forms* (West 1994).

### 5. *Analysis of Caselaw Cited By Mass Mutual*

In support of their argument that the prepetition appointment of a receiver extinguishes all rights of the Debtor in future rents, however, Mass Mutual cites to three cases, *In re Fullop,* 6 F.3d 422 (7th Cir.1993), *In re Century Investment Fund VIII Ltd. Partnership,* 937 F.2d 371 (7th Cir.1991) and *In*

---

**15.** A "custodian" is defined in section 101(11) as a:

 (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
 (B) assignee under a general assignment for the benefit of the debtor's creditors; or

 (C) trustee, *receiver,* or agent under applicable law, or under a contract, *that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;* (emphasis added).

*re VIII South Michigan Associates,* 145 B.R. 912 (N.D.Ill.1992).

Mass Mutual's reliance on *Fullop, supra,* as support for their argument is completely unfounded. In *Fullop,* the Chapter 7 trustee brought an action to avoid a lessee's lien on extracted oil and proceeds from the sale of such oil pursuant to an oil and gas lease. The Seventh Circuit determined that, under Illinois law, the lessee perfected its lien on the postpetition proceeds from the sale of oil by being placed in possession of the property by court order during foreclosure proceedings. *Fullop,* 6 F.3d at 430. Having done so, the Court thus held that the lessee was entitled to collect postpetition proceeds and the Chapter 7 trustee could not avoid the lessee's lien pursuant to section 544. *Id.* at 430–31. The *Fullop* decision, therefore, is wholly consistent with this Court's determination that assigned rents are property of the estate subject to the mortgagee's priority lien.

Next, Mass Mutual's reliance on *Century, supra,* is tenuous at best. In *Century,* the mortgagee held a duly recorded first mortgage on real property owned by Century together with a duly recorded assignment of leases and rents from such property as consideration for a loan. The mortgage provided for an absolute assignment of all rents and leases upon default by Century. Century defaulted on its mortgage and, soon thereafter, the mortgagee brought a foreclosure action and moved for the appointment a receiver in state court. While the foreclosure proceeding was pending, but before a receiver was appointed, Century filed a Chapter 11 bankruptcy petition.

The mortgagee moved in the bankruptcy court for a determination that the filing of the state court foreclosure action perfected its security interest in the rents, so that it was entitled to adequate protection under section 363 of the Bankruptcy Code. *In re Century Investment Fund VIII, L.P.,* 155 B.R. 1002, 1003 (Bankr.E.D.Wisc.1989). The bankruptcy court concluded that, under Wisconsin law, the mortgagee had perfected its security interest in the rents when it commenced its action for foreclosure and receivership prior to the filing of the bankruptcy

petition and, therefore, the rents were cash collateral, for which the mortgagee was entitled to adequate protection. *Century,* 155 B.R. at 1005–06.

On appeal, the district court reversed the bankruptcy court and found the filing of the foreclosure action and appointment of a receiver were not sufficient to perfect the mortgagee's security interest. The sole matter on appeal was whether the mortgagee's foreclosure action and petition for appointment of a receiver had perfected its security interest in the rents prepetition. *In re Century Investment Fund VIII, L.P.,* 1990 U.S.Dist. LEXIS 8128 at *5 (E.D.Wisc. April 26, 1990). In reaching its conclusion, the district court found that perfection required that the mortgagee either take possession of the subject property or have a receiver appointed. 1990 U.S.Dist. LEXIS 8128 at *13. Because Century's bankruptcy petition was filed prior to actual possession by the mortgagee or the appointment of a receiver, the mortgagee had not perfected its interest in the rents. 1990 U.S.Dist. LEXIS 8128 at *14. Consequently, the district court held that the rents did not constitute cash collateral and, therefore, the debtor had the right to use the rents without providing adequate protection under section 363. 1990 U.S.Dist. LEXIS 8128 at *15. The mortgagee appealed.

The Seventh Circuit reversed the district court's holding and determined that under applicable state (Wisconsin) law and the language of the mortgage agreement, the mortgagee's lien on the rents arose upon Century's default and the prepetition filing of the foreclosure action perfected this lien. *Century,* 937 F.2d at 378–80.

In an introduction to its analysis, the Seventh Circuit stated in *dicta* that:

> Generally speaking, if a mortgagee has protected its security interests in a mortgagor's property and rental proceeds by perfecting its liens under the requirements of state law, then those interests do not later become property of the bankruptcy estate. Once bankruptcy is filed, the debtor has the right to the use of the rental

proceeds only if the security interests were not perfected under state law.

*Id.* at 375.

The central issue before the bankruptcy court in *Century* was whether rents subject to the mortgagee's lien were cash collateral. *Century,* 155 B.R. at 1003 (Bankr. E.D.Wisc.1989). Moreover, the sole issue on appeal at both the district and appellate court levels was whether the mortgagee's interest was duly perfected so that it would be entitled to adequate protection pursuant to Code section 363. *Century,* 937 F.2d at 372, 375 (7th Cir.1991); *Century,* 1990 U.S.Dist. LEXIS 8128 at *5 (E.D.Wisc. April 26, 1990). Furthermore, the Seventh Circuit in *Century* affirmed the bankruptcy court's ruling that the postpetition rents were cash collateral and the mortgagee only held a secured interest in those rents. 937 F.2d at 380 (reinstating the order of *In re Century Investment Fund VIII L.P.,* 155 B.R. 1002 (Bankr.E.D.Wisc.1989)). It is clear that the introductory statement is *dicta.* The language is only understandable if the court meant to refer to the debtor's unfettered use of the mortgagee's security without protecting that interest. At no time did the Seventh Circuit in *Century* enter a direct holding that there was a transfer of title so that the assigned rents were no longer property of the estate.

The bankruptcy court in *In re Willows of Coventry Ltd. Partnership,* 154 B.R. 959 (Bankr.N.D.Ind.1993), has analyzed the Seventh Circuit's opinion in *Century. Willows* dealt with the issue of whether rents subject to an assignment in favor of a mortgagee who obtained the appointment of a receiver prepetition constitute property of the bankruptcy estate. In *Willows,* the Chapter 11 debtor in possession of an apartment complex sought turnover of rents from the receiver who had been appointed prepetition during a state court foreclosure action instituted by the mortgagee. As the court in *Willows* stated:

All that [the appointment of a receiver] changed was the right to possession. Thus, as of the date of the petition, the rents generated by the apartment complex constituted property of the bankruptcy estate, despite the fact, that under state law, the receiver had the right to possession of both the rents and the underlying real estate.

*Id.* at 965.

Relying on the Supreme Court's analysis in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the *Willows* court then concluded that since ownership rights to the rents had not been determined by the state court prior to the bankruptcy filing, the rents were property of the estate and subject to turnover by the receiver under section 543. 154 B.R. at 965–66.

Akin to the argument presented to this Court, the mortgagee in *Willows* claimed that the Seventh Circuit's decision in *Century* required a finding that the prepetition appointment of a receiver excluded the assigned rents from the bankruptcy estate. The court in *Willows* rejected this assertion, however, and found that when the proceedings of *Century* are read *in globo,* the actual holding of the Seventh Circuit was that the rents were cash collateral subject to a secured lien of the mortgagee. *Id.* at 966.

The District Court for the Northern District of Illinois in *VIII South Michigan, supra,* relied solely on the *dicta* from *Century* to hold that rents subject to an assignment which a mortgagee has duly perfected prior to the filing of the mortgagor's bankruptcy petition are the exclusive property of the mortgagee and not cash collateral. 145 B.R. at 915. In *VIII South Michigan,* the mortgagee held a mortgage on the debtor's office building coupled with an assignment of rents, which were recorded prepetition. Following the debtor's default, the mortgagee exercised its rights under the assignment of rents by notifying the tenants of the default and instructing the tenants to pay future rents directly to the mortgagee. In light of the bankruptcy court's holding that the mortgagee had perfected its lien by recording the assignment of rents and instructing the tenants to remit rent payments to the mortgagee, the district court reversed the bankruptcy court's ruling that the assigned rents were cash collateral, finding that such a holding would be contrary to *Century. Id.* This

Court respectfully rejects the district court's interpretation of the *Century* opinion.[16]

The court in *In re 5028 Wisconsin Ave. Associates Ltd. Partnership,* 167 B.R. 699 (Bankr.D.C.1994), declined to follow the holding of *VIII South Michigan,* finding that the court's decision was inconsistent with the Supreme Court's holding in *Butner,* that a mortgagee may not receive any greater security interest in rents under bankruptcy law than provided for by state law. *Id.* at 705 n. 9 (citing *Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). The court explained that:

> When the mortgagee does have a perfected and choate interest in rents, *Butner* does not require that a debtor's ownership interest in the rents be nullified, but only that the extent of the security interest be determined by state law. The provisions of 11 U.S.C. § 363 concerning use of cash collateral embody a "federal interest [that] requires a different result" (*Butner,* 440 U.S. at 55, 99 S.Ct. at 918) than under state law when it comes to the question whether the debtor may use the mortgagee's collateral despite the absence of a right to do so under state law outside of bankruptcy.

*5028 Wisconsin Ave.,* 167 B.R. at 706 n. 9.

In an attempt to stem the tide of confusion wrought by the *VIII South Michigan* court's misinterpretation of *Century,* this Court will now examine the recent opinion of *In re Bellevue Place Associates,* 173 B.R. 1009 (Bankr.N.D.Ill.1994), which might be construed as supporting the holding in *VIII South Michigan.* The issue addressed in *Bellevue* was whether the mortgagee perfected its security interest in the debtor-hotel's revenues by filing a state court foreclosure action prepetition, such that it became the owner of all prepetition receipts collected by the debtor. The court found that because the mortgagee never obtained prepetition possession of the hotel revenues, *Wheaton Oaks, Century,* and *VIII South Michigan* were distinguishable. *Bellevue,* 173 B.R. at 1022. The court thus held that the hotel receipts, which constitute rent under Illinois law, were cash collateral subject to the mortgagee's security interest. *Id.*[17] Recognizing that, under Illinois law, rents are an incident of possession, the *Bellevue* court asserted in *dicta* that, "the proper method for a mortgagee to obtain *title* to rents is to obtain appointment of a receiver or to be placed in possession." *Id.* (emphasis added). Although this Court concurs with the holding in *Bellevue,* the Court treats this statement the same as the *dicta* in *Century.* Furthermore, to the extent that the *dicta* in *Bellevue* may suggest that the appointment of a receiver transfers title to assigned rents, this Court respectfully disagrees.

Illinois law clearly provides that a mortgagor's ownership interest in mortgaged property and assigned rents are not extinguished by the execution of a mortgage or the appointment of a receiver in foreclosure proceedings. This Court therefore holds that rents from the mortgaged property are property of the estate and are cash collateral subject to Mass Mutual's perfected security interest.

## B. Motion For Stay Relief

Mass Mutual requests that the Court modify the automatic stay, pursuant to section 363(d), to allow Mass Mutual to continue the state court foreclosure proceedings on the Property. In support of their motion, Mass Mutual contends that: (1) the Debtor has no realistic ability to reorganize; (2) Mass Mutual is not adequately protected; and (3) the bankruptcy case was filed in bad faith. The

---

**16.** As this Court thoroughly explained in *In re Shattuc Cable Corporation,* 138 B.R. 557 (Bankr. N.D.Ill.1992), as units of the district court, bankruptcy courts are "not bound [under the principle of stare decisis] to follow the decision of a single district court judge in a multi-judge district when they disagree with the reasoning and conclusions expressed therein." *Id.* at 565–67.

**17.** One of the central issues in *Bellevue* was whether hotel revenues constitute rents as contemplated by section 552 of the Bankruptcy Code. This issue has been resolved, however, pursuant to the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994), which expressly extends the application of section 552 to hotel revenues in the same manner as rents.

Court will address each of these issues separately.

### 1. *Ability to Reorganize*

■ Section 362(d)(2) provides that relief from the automatic stay must be granted if the debtor has no equity in the property and the property is not necessary to an effective reorganization. The party seeking stay relief has the burden of proving a lack of equity in the property. 11 U.S.C. § 362(g); *United Savings Association v. Timbers of Inwood Forest*, 484 U.S. 365, 375, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988); *In re Boomgarden*, 780 F.2d 657, 663 (7th Cir.1985); *In re 8th Street Village Ltd. Partnership*, 88 B.R. 853, 856 (Bankr.N.D.Ill.1988); *aff'd* 94 B.R. 993 (N.D.Ill.1988). In this case, Mass Mutual filed a proof of claim for $8,653,747.35, which is *prima facie* evidence of the validity and amount of the claim. *See* Bankruptcy Rule 3001(f). Additionally, as previously discussed, the Court finds that, pursuant to the evidence presented in this case, the debt exceeds the stipulated $7 million value of the Property. Because of the summary nature of a hearing to determine relief from the automatic stay, this Court need not go any further into the actual validity of Mass Mutual's claim. *See In re Midway Airlines, Inc.*, 167 B.R. 880, 883 (Bankr.N.D.Ill.1994). The Debtor has no equity in the Property and Mass Mutual's claim is undersecured.

■ The burden of proof now shifts to the Debtor to establish that the Property is necessary to an effective reorganization. 11 U.S.C. § 362(g); *see Timbers*, 484 U.S. at 375, 108 S.Ct. at 632; *8th Street Village*, 88 B.R. at 856, *aff'd* 94 B.R. 993 (N.D.Ill.1988). To do so, the Debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, 484 U.S. at 375, 108 S.Ct. at 632.

■ There is a sliding scale as to the extent a debtor must prove the possibility of an effective reorganization in a lift stay proceeding depending on the stage of the case. *Timbers*, 484 U.S. at 376, 108 S.Ct. at 632–33; *In re Ashgrove Apartments of DeKalb Coun-*

*ty, Ltd.*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990). As the court in *Ashgrove* explained:

[I]n the initial stages of a Chapter 11 proceeding, the debtor should be granted significant leeway in attempting to establish that successful reorganization is a reasonable possibility. However, as the case progresses, so too does the debtor's burden of proving that successful reorganization may be reasonably expected. Even at the later stages, a motion for relief from stay should not be turned into a confirmation hearing; that is not the debtor's burden of proof. Rather, the test should be viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages.

121 B.R. at 756. The *Ashgrove* court further concluded that the debtor must at least establish that: (1) "[i]t is moving meaningfully to propose a plan of reorganization;" (2) "[t]he proposed or contemplated plan has a realistic chance of being confirmed;" and (3) "[t]he proposed or contemplated plan is not patently unconfirmable." *Id.*

In this case, the Debtor has not yet filed a proposed plan of reorganization. The Court is thus left with the testimony and evidence presented during the hearing. The Debtor's basic strategy for reorganization is to increase the occupancy rate of the Property from approximately 60 percent to 90 percent. Mr. Buccola testified that he anticipates entering into lease agreements with two prospective tenants, Whole Foods Market and Blockbuster Music. According to Mr. Buccola's leasing proposal, Mikasa, a tenant currently leasing approximately 25,000 square feet, would have to relocate to a smaller space of approximately 10,000 square feet. Blockbuster Music would lease the space currently occupied by Mikasa at a base rent of $6.50 per square foot and Whole Foods would lease approximately 26,000 square feet of space at a base rent of $14.00 per square foot. Mr. Buccola also testified that extensive renovations would be necessary to effectuate this leasing proposal, requiring a capital infusion of approximately $1 million dollars.[18] This would leave approximately 14,-

---

18. The proposed Whole Foods lease calls for a 2,000 square foot addition to the premises, a loading dock, and 17 additional parking spaces, all of which were to be funded by the Debtor.

000 square feet of vacant space. The leasing proposals also would require approval from the Village planning commission due to some rezoning changes associated with the improvements. Mr. Buccola does not anticipate any objections by the Village board regarding these proposals.

The evidence presented, however, shows that the Debtor's proposals are speculative at best. First, the proposed leases with Whole Foods and Blockbuster Music are still in the negotiation process and there is no certainty that they will be consummated. Next, Debtor's proposal is contingent upon Mikasa's agreement to terminate their existing lease, which expires in August 1995, and to relocate to a space half the size that it currently occupies. The Debtor has presented no concrete evidence that Mikasa is willing to make such a move. In fact, Mr. Buccola testified that conversations with the president of Mikasa only a week prior to these hearings revealed that Mikasa is still in the process of reviewing their options, which include extending the five-year option on their lease or leaving the Property altogether. Mr. Buccola further testified that, aside from the leases with Whole Foods and Blockbuster Music, there are no alternative tenancies being negotiated.

Even assuming that the proposed leases with Whole Foods and Blockbuster Music are consummated and that Mikasa is willing to relocate, the success of the Debtor's proposals is still tentative. Mr. Buccola testified that due to the necessary renovations, Blockbuster Music and Whole Foods would not be expected to open until early 1996. Because the Debtor would not receive rent from these new leases until 1996, an additional capital infusion of one to two million dollars would be necessary to carry the Property until that time. Additionally, the terms of the proposed lease with Whole Foods provides that rent payments would not begin for six months.

The Debtor has no prospect of being able to fund these proposals. Mr. Buccola testified that he has no written commitments from the other partners to invest any additional funds in the Debtor. Mr. Buccola further testified that previous discussions with the other partners revealed that they had no interest in investing any additional equity into the partnership. Additionally, Mass Mutual had offered the Debtor a one-year extension on their loan prior to the maturity date in exchange for a $300,000 paydown of the principal balance. Mr. Buccola testified, however, that he was unwilling to contribute an additional $300,000 into the partnership at that time because the lease negotiations with Whole Foods were too tentative. Nor has the Debtor offered any proof of potential refinancing necessary to implement the leasing proposals. The Debtor suggested that a conditional commitment was offered by First Midwest Bank to refinance the Property for $7,275,000. But in fact, the letter from First Midwest, dated March 17, 1994, expressly stated that they were not offering a commitment for refinancing, but merely providing an outline of their general terms which were based on a number of contingencies, including a signed lease with Blockbuster Music. Furthermore, the refinancing proposal specifically stated that the $7,275,000 figure was based on a 70% loan value and that an appraisal reflecting sufficient value in the Property was required prior to any commitment. In light of the fact that the stipulated value of the Property is $7 million, the purported refinancing agreement is worth only the paper on which it is written. The Debtor further referred to an unconditional purchase offer from Federal Realty Investment Trust made on May 12, 1994, to purchase the Property for $7,500,000. The offer from Federal Realty, however, expired over five months ago, and there has been no evidence presented to suggest that Federal Realty is still interested in purchasing the Property. The only other testimony offered regarding potential financing were vague references to discussions with unidentified parties who might be interested in investing if given the right set of circumstances.

Additional costs include refurbishing the facie and changing the sign package, as well as paying

applicable leasing commissions.

There was absolutely no testimony offered by either party regarding any financial projections which would show an ability to reorganize. Nor were there any discussions or evidence presented reflecting the Debtor's cash flow after debt service.

 The Court has taken into consideration that the Debtor's bankruptcy petition was filed only two months ago. In the first few months after filing, the debtor is under less stringent demands to demonstrate the possibility of a successful reorganization. *Timbers*, 484 U.S. at 376, 108 S.Ct. at 632–33; *Century*, 155 B.R. at 1007 (stating that "the details of a possible plan need not be extensive when the hearing was held less than two months after filing"), *aff'd*, 937 F.2d 371 (7th Cir.1991); *Ashgrove*, 121 B.R. at 757. But, even at this early stage of the bankruptcy case, the debtor is still required to present some evidence that an effective reorganization is possible. *See Timbers*, 484 U.S. at 376, 108 S.Ct. at 632–33; *In re New American Food Concepts, Inc.*, 70 B.R. 254, 262 (Bankr.N.D.Ohio 1987); *In re 6200 Ridge, Inc.*, 69 B.R. 837, 843 (Bankr.E.D.Pa.1987) (stating that "11 U.S.C. § 362(d)(2)(B) requires that relief from stay be granted if there is no reasonable likelihood of reorganization") (citations omitted); *In re Terra Mar Associates*, 3 B.R. 462, 466 (Bankr.D.Conn. 1980). After reviewing the foregoing testimony and evidence, the Court concludes that the Debtor has failed to demonstrate any realistic prospect of an effective reorganization. As summarized by the court in *In re Anderson Oaks (Phase I) Ltd. Partnership*, 77 B.R. 108 (Bankr.W.D.Tex.1987), "[t]he court should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the

likelihood of an effective reorganization." *Id.* at 110 (citing *In re Playa Development Corp.*, 68 B.R. 549, 556 (Bankr.W.D.Tex. 1986)). Thus, Mass Mutual is granted relief from the automatic stay to proceed with foreclosure.

### 2. *Adequate Protection*

 Relief from stay is also warranted because Mass Mutual's interest is not adequately protected. Section 362(d)(1) provides that relief from stay must be granted, unless the debtor can prove that the creditor seeking relief is adequately protected.[19] Generally, adequate protection can be established upon a showing that: (1) the value of the property is stable; (2) the property is insured and well-maintained; and (3) the debtor is current with postpetition payments to the creditor.

At the present time, the Property is insured and is being maintain by the Receiver. The Receiver testified that the Property currently is in good condition and is operating at a positive cash flow before debt service. As Mr. Buccola testified, the Debtor has made no debt service payments to Mass Mutual since February 1994. Moreover, the Debtor did not offer an estimate of what their monthly debt service payments would be under a plan of reorganization. As this Court previously has stated, there are no equity funds available to develop, stabilize or expand the productivity of the Property. Thus, this Court cannot even speculate as to whether there would be sufficient capital to offer Mass Mutual adequate protection. Given the fact that Mass Mutual's claim has exceeded the value of the Property since 1993, that the debt continues to accrue late charges and interest payments, and that Debtor has made

---

**19.** Bankruptcy Code section 361 addresses adequate protection and provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

no payments to reduce this debt for over eight months, this Court finds that Mass Mutual's interest in the Property is not adequately protected.

### 3. *Bad Faith Filing*

Mass Mutual also requests relief from stay on that grounds that this case was filed in bad faith. Mass Mutual asserts that this case meets all of the factors of the "bad faith filing checklist," such as:

(1) The Debtor has only one asset;

(2) the Debtor has few unsecured creditors whose claims are small in relation to the claims of Mass Mutual;

(3) the Debtor has few employees;

(4) the Property is the subject of a foreclosure action as a result of arrearages on the debt;

(5) the Debtor's financial problems involve essentially a dispute between the Debtor and Mass Mutual which can be resolved in the pending state court action; and

(6) the timing of the Debtor's filing evidences bad faith.

Mass Mutual has cited to various cases which have considered these particular factors in granting dismissal, including *In re Schmidt Farm Partnership*, 161 B.R. 429 (N.D.Ill.1993), *In re McCormick Road Associates*, 127 B.R. 410 (N.D.Ill.1991) and *In re Park Place Associates*, 115 B.R. 940 (Bankr. N.D.Ill.1989). But the grounds for dismissal in each of these cases were based on more than just the presence of these particular factors.

Certainly a court must consider these "bad faith factors" when determining a relief from stay motion or a motion to dismiss. But no particular set of factors alone are determinative of bad faith. Rather, these factors are among many items which the court must consider in light of the totality of the circumstances surrounding each bankruptcy case. As the court in *In re N.R. Guaranteed Retirement, Inc.* articulately explained:

A review of the Chapter 11 decisions in which lack of good faith in filing is cited as ground for relief suggests that, instead of a single good faith inquiry, the courts have actually responded to several distinct grounds for relief, stemming from different concerns and reflected in differing factual circumstances. By dealing with these grounds separately, it is possible to develop more consistent and predictable tests of "cause" for dismissal or relief from stay than the lists of good-faith factors.

112 B.R. 263, 272 (Bankr.N.D.Ill.1990), *aff'd* 119 B.R. 149 (N.D.Ill.1990); *see also In re Mandalay Shores Cooperative Housing Ass'n, Inc.*, 63 B.R. 842, 848 (N.D.Ill.1986); *In re Bellevue Place Associates*, 171 B.R. 628, 634 (Bankr.N.D.Ill.1994); *In re Foundry of Barrington Partnership*, 129 B.R. 550, 555–56 (Bankr.N.D.Ill.1991).

Mass Mutual also contends that the Debtor's motive in filing for bankruptcy was to forestall the foreclosure proceedings in order to defer adverse tax consequences to the limited partners. Although evidence was presented indicating that the partners were concerned about the tax consequences of foreclosure, this alone is not enough to establish bad faith. Another indication of bad faith suggested by Mass Mutual is that Mr. Buccola engaged in dilatory trial tactics during the foreclosure proceedings by filing mechanic's liens and a countercomplaint which complicated Mass Mutual's efforts to foreclose. A property owner certainly has every right to engage in litigious actions to avoid foreclosure, and the Debtor's adverse attempts to put off foreclosure are not proof of a bad faith filing. If there is a reasonable chance for an effective reorganization, a debtor has every right to file for bankruptcy in the midst of a foreclosure action. *See In re James Wilson Associates*, 965 F.2d 160, 171 (7th Cir.1992). In fact, the very purpose of the automatic stay is to provide debtors with some breathing room from such foreclosure proceedings to enable them to make a fresh start. Accordingly, Mass Mutual has failed to prove that this was a bad faith filing.

### C. Motion to Dismiss

Alternatively, Mass Mutual has moved that this case be dismissed. In light of the fact that this Court has lifted the automatic stay on the Property, which is the Debtor's sole asset, the Debtor has nothing

left to reorganize. Consequently, the Debtor is unable to effectuate a plan, which is cause to dismiss this case pursuant to section 1112(b)(2). Procedural deficiencies in Mass Mutual's motion, however, prevent this Court from granting dismissal. Bankruptcy Rule 2002 requires that all creditors be provided with twenty days notice of a motion to dismiss a Chapter 11 case, which Mass Mutual failed to do. Should Mass Mutual wish to proceed with its motion to dismiss, they will need to set a motion date with this Court and send proper notice to all creditors. Mass Mutual's motion to dismiss is denied.

### D. Turnover of Property by the Receiver

Mass Mutual has also requested this Court to excuse the Receiver from her obligations to turnover the Property pursuant to section 543 of the Code. Mass Mutual raises three arguments in support of their motion: (1) the Debtor has mismanaged the Property by converting funds which belong to the Debtor's estate; (2) changing management at this time will adversely affect the operation of the Property; and (3) the Debtor does not have a likely chance of reorganizing. In sum, Mass Mutual contends that the interests of creditors would best be served by preserving management and control of the Property with the Receiver.

In light of the fact that lifting of the automatic stay will permit Mass Mutual to proceed with foreclosure proceedings in state court and that Illinois law creates a presumption in favor of the mortgagee's right to possess nonresidential real estate during the pendency of foreclosure proceedings, 735 ILCS ¶5/15–1701(b)(2) (1992); *Home Life Insurance Co. v. American National Bank and Trust,* 777 F.Supp. 629, 631 (N.D.Ill.1991); *Travelers Insurance Co. v. LaSalle National Bank,* 200 Ill.App.3d 139, 143, 146 Ill.Dec. 616, 618, 558 N.E.2d 579, 581 (2d Dist.1990),[20] this Court should not interfere with the state court directed proceedings. Therefore, the Receiver will be

excused from turning over the Property to the Debtor.

### E. Debtor's Motion to Use Cash Collateral

Finally, Debtor seeks authorization from this Court to use the cash collateral subject to Mass Mutual's lien to maintain and operate the Property. The Court may only authorize the Debtor to use cash collateral under section 363(c), to the extent that such relief is not inconsistent with any relief granted under section 362(d). Given the relief from stay granted to Mass Mutual pursuant to section 362(d)(2), Cadwell's will not be permitted to use the cash collateral.

## IV. CONCLUSION

For the reasons stated herein, (1) Mass Mutual's motion to modify the automatic stay is granted; (2) Mass Mutual's motion to dismiss is denied; (3) Mass Mutual's motion to excuse the receiver from compliance with 11 U.S.C. § 543 is granted; (4) Cadwell's motion for turnover of property and for an accounting is denied; and (5) Cadwell's motion for authority to use cash collateral is denied.

---

**20.** The presumptive right to possession of residential property during foreclosure, however, lies with the mortgagor. 735 ILCS ¶5/15– 1701(b)(1) (1992); *Travelers,* 200 Ill.App.3d at 143, 558 N.E.2d at 581.